## CHURCH OF SCIENTOLOGY OF CALIFORNIA, INC., Appellant

### v.

### Stansfield TURNER, Director, Central Intelligence Agency, et al.

### No. 80–1172.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 14, 1980.

Decided Dec. 18, 1980.

Robert A. Seefried, Washington, D. C., with whom Earl C. Dudley, Jr., Washington, D. C., was on the brief for appellant.

Marc Johnston, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellee.

Wendy N. Keats, Washington, D. C., entered an appearance for appellee.

Before McGOWAN and EDWARDS, Circuit Judges, and JOYCE HENS GREEN,*

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

United States District Judge for the District of Columbia.

### Opinion PER CURIAM

PER CURIAM:

This is an appeal from a grant of summary judgment by the District Court in favor of defendant Central Intelligence Agency and its director, Stansfield Turner, in an action challenging appellees' refusal to release all or portions of 25 documents requested under the Freedom of Information Act. The critical question presented to us on appeal is the sufficiency *vel non* of agency affidavits submitted as a *Vaughn* index.[1] Finding that the CIA's affidavits contained detail ample enough to permit the District Court to rule on its claims of exemption, we uphold the grant of summary judgment.

Appellant Church of Scientology of California filed in 1975 a FOIA request with the Central Intelligence Agency seeking all documents relating to any of its affiliated organizations or its founder, L. Ron Hubbard. On an earlier appeal from the District Court's refusal to require release of all requested documents, we remanded this case to the District Court for further consideration in light of *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir.1978). Upon remand, the District Court ordered the CIA to file a new *Vaughn* index and accompanying affidavits. The CIA complied, describing in detail the documents in issue and its reasons for withholding wholly or in part 25 of the 40 documents it had identified as responsive to appellant's request. In addi-

tion, the District Court inspected some of the withheld documents *in camera.* On the basis of the affidavits and its inspection, the court granted the CIA's motion for summary judgment.

The tension inherent in any FOIA demand directed to a government agency engaged in confidential national security affairs has confronted this court in previous cases. On several occasions,[2] we have refused to uphold summary judgment orders based upon agency affidavits that were too conclusory or vague to allow the District Court to decide, upon reviewing the claims *de novo* as required by FOIA, whether the documents fell within the ambit of either FOIA exemption 1, 5 U.S.C. § 552(b)(1), covering material appropriately classified under an executive order, or exemption 3, 5 U.S.C. § 552(b)(3), protecting material exempted from disclosure by certain other statutes.[3]

For example, in *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824 (D.C.Cir.1979), this court held that an affidavit stating that disclosure would "jeopardize [the agency's] national security functions" was too conclusory, absent a showing of the particularized harm that could be expected to occur from production of the requested information. However, we have also affirmed orders of summary judgment in favor of agencies seeking to protect confidential information when their affidavits were specific enough to allow a District Court judge to exercise meaningful *de novo* review. In *Baez v.*

---

1. A *Vaughn* index is compiled for all documents the government wishes to withhold in order to provide an opportunity for judicial evaluation of the exemption claims without the invariable need to inspect the contested documents. The affidavits accompanying the *Vaughn* index should describe the indexed documents and why each is being withheld with enough particularity to make meaningful review possible. *See Dellums v. Powell,* 642 F.2d 1351, 1359–1360 (D.C.Cir.1980); *Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

2. *See, e. g., Allen v. CIA,* 636 F.2d 1287 (D.C. Cir.1980); *Founding Church of Scientology v.*

*National Security Agency,* 610 F.2d 824 (D.C. Cir.1979); *Ray v. Turner,* 587 F.2d 1187 (D.C. Cir.1978).

3. In this case, the order relevant for exemption 1 purposes is Executive Order 12065, 43 Fed. Reg. 28,949 (1978). The CIA asserts that exemption 3 is also applicable because the provision incorporates by reference 50 U.S.C. § 403(d)(3), which says, in pertinent part, that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from · unauthorized disclosure...." For a judicial gloss on the term "intelligence source," see *Sims v. CIA,* 642 F.2d 562 at 567–571 (D.C.Cir.1980).

*United States Department of Justice,* 647 F.2d 1328 (D.C.Cir.1980), nondisclosure was upheld on the basis of affidavits asserting that, *inter alia,* producing the documents would reveal cooperation with and perhaps the identity of a foreign intelligence service or a covert intelligence source. *See id.* at 1335.

In determining the adequacy *vel non* of agency representations we are obliged to keep in mind the cautionary words of *Vaughn* itself. In that case, the court said that "[a]n analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the documents." *Vaughn v. Rosen,* 484 F.2d 820, 826–27 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (footnote omitted). Therefore, the fact that the agency has not disclosed in its affidavits the information the documents contain need not lead to the conclusion that the affidavits are inadequate.

In this case, the CIA has, in obvious response to the earlier teachings of this court, been at some pains to provide two lengthy affidavits which, while not disclosing the contents of the withheld documents, provide a reviewing judge with a wealth of information. The affidavits include a lengthy general discussion of the adverse consequences that could flow from releasing the information withheld. The release of any particular document, the CIA warned, could lead to one or more of the following harmful results: breaching agreements with foreign intelligence services, refusal of intelligence sources to share information in the future, revelation of intelligence-gathering

methods, and disclosure of the identity of foreign or CIA intelligence operatives either directly or by inference from the content of the information. The affidavits assert that release of a message's content could lead to the revelation of its source, since certain types of information are known to be in the possession of only a few. *See* Supplemental Appendix at 9 [hereinafter referred to as S.A.]. Appellant has adduced no evidence tending to undercut the plausibility of this argument.

Having identified the various harms that could be expected from the documents' production, the CIA then goes on to explain how they relate to FOIA's exemptions 1 and 3. The agency states that these unwelcome consequences are exactly what Executive Order 12065 and 50 U.S.C. § 403(d)(3) seek to avoid. Since exemption 1 incorporates Executive Order 12065 and exemption 3 the statute, *see* note 3 *supra,* the CIA argues that these documents are exempt from disclosure.

Building upon this general argument, largely contained in the first, or Owen, affidavit, both affidavits provide a paragraph-by-paragraph analysis of each of the documents withheld in whole or in part. For each document the affidavits indicate the sender, the recipient, the source of the information, and why partial release was or was not possible. For each segment withheld, the affidavits specifically indicate which of the adverse consequences discussed earlier could occur upon release.[4]

We believe that these affidavits provided the kind of detailed, scrupulous description that enables a District Court judge to perform a searching *de novo* review.[5] The

---

**4.** The discussion of any one document suffices to give a flavor of the affidavits. For example, Document No. 18 was released in part with the following explanation: "This document is a two-page dispatch . . . from CIA Headquarters to a foreign CIA station which consists of information . . . on L. Ron Hubbard. . . . It is released with certain deletions. In the first and second paragraphs, five cryptonyms were deleted pursuant to exemption (b)(3). . . . The third and fourth paragraphs were denied in their entirety pursuant to exemptions (b)(1)

and (b)(3) coextensively since both paragraphs consist of information provided in confidence by the intelligence services of two named countries; since the third paragraph refers to a foreign CIA station and operations; and since the fourth paragraph contains a cryptonym. . . ." S.A. at 25 -26.

**5.** In addition, it is appropriate for the District Court to inspect some or all of the documents *in camera,* as was done in this case, to ensure that the claimed exemptions are appropriate. The availability of *in camera* review is further

harms to which the CIA directs the court's attention are neither amorphous nor conclusory, but reasonable articulations of precise consequences. The individual descriptions of each portion of the documents further permit the District Court to determine whether the agency has properly segregated, within each document, exempt material from information it must provide to the requester. The CIA could provide no more information without revealing the content of the document, which was what it sought to protect from disclosure.

We think that a reasonable balance must be struck between the competing congressionally-sanctioned policies of public access to government information, on the one hand, and maintenance of a functioning intelligence-gathering system, on the other. We have consistently maintained that vague, conclusory affidavits, or those that merely paraphrase the words of a statute, do not allow a reviewing judge to safeguard the public's right of access to government records. We believe that the affidavits provided in this case, bottomed as they are upon specification of both intelligence sources and of the harm to be expected from disclosure, provide a suitably informed basis on which a District Court could rationally determine that the withheld portions of the requested documents are within the claimed statutory exemptions. Accordingly, we affirm.

*It is so ordered.*

assurance that the District Court will be able to provide plaintiffs the benefits of *de novo* re-

view without disclosing what the government seeks to maintain in confidence.