**Paul HOCH, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 82–0754.**

United States District Court, District of Columbia.

July 30, 1984.

Laura F. Einstein, Atty., Advisor, U.S. Dept. of Justice, Washington, D.C., for defendant.

James H. Lesar, Fensterwald & Associate, Arlington, Va., for plaintiff.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., Chief Judge.

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a), and arises out of several FOIA requests made by Plaintiff. On various dates beginning with March 17, 1976, Plaintiff requested the following information: (1) materials submitted to the Rockefeller Commission regarding Plaintiff's allegations of CIA activity and the Warren Commission investigation into the assassination of President John F. Kennedy; (2) documents numbered 1083 through 1092 in another FOIA action known as *Fensterwald;* (3) all CIA records relating to the interception of letters to or from Lee Harvey Oswald and his wife; (4) documents numbered 1004 through 1129 in *Fensterwald;* and (5) document numbered 1087 in *Fensterwald* (a second request).

On March 16, 1982, Plaintiff initiated this action after receiving numerous acknowledgements from Defendant that it was processing his request and after making an administrative appeal. In May of 1982, Defendant notified Plaintiff that there were numerous CIA originated documents responsive to Plaintiff's several requests as well as some other documents responsive to the requests which contained information classified by other government agencies and which were being reviewed by those agencies.

Defendant now contends that all documents in the possession of Defendant that are responsive to Plaintiff's requests and releaseable under the FOIA were released to Plaintiff on various dates. The CIA contends that it has withheld from Plaintiff a number of documents and portions of documents on the basis of FOIA exemptions 1, 3, 5, 6, and 7. Based on this contention, the CIA has moved for summary judgment.

Plaintiff opposes Defendant's motion for summary judgment and contends that the Court cannot make a determination without conducting an *in camera* inspection of the documents in issue in this action or without allowing Plaintiff to engage in discovery. Plaintiff does not challenge the showing made by the United States Air Force and the National Security Agency. Similarly, Plaintiff does not challenge Defendant's invocation of exemption 7. To the extent

discussed below, however, Plaintiff takes issue with the exemption claims asserted by the Federal Bureau of Investigation and the Central Intelligence Agency.

## EXEMPTION 1

5 U.S.C. § 552(b)(1) exempts from disclosure records that are:

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to such Executive order:

Defendant relies on this exemption to withhold information classified pursuant to Executive Order 12065, 43 Fed.Reg. 28949 (July 3, 1978). Shortly before Defendant's papers were filed, however, President Reagan revoked Executive Order 12065 and replaced it with Executive Order 12356, 47 Fed.Reg. 14874 (1982) (effective Aug. 1, 1982). Subsequent to this, the Court ordered Defendant to submit supplemental affidavits from those agencies which provided information to the CIA that was thereafter incorporated into CIA documents. These documents were reviewed for possible declassification under the new Executive Order.

■ It should be noted that the substantive classification criteria of Old Executive Order 12065 are all included in the new Executive Order, so that all documents classified under the Old Executive Order would also be classifiable under the new Order. *Afshar v. Department of State,* 702 F.2d 1125, 1137–1138 n. 18 (D.C.Cir. 1983). The new Order supplements the categories of information that may be classified with several new ones and deletes the requirement of "identifiable damage" to national security. These changes generally tend to increase the amount of classifiable material. *Id.* at 1129 n. 4. Because the Court is required to apply the Executive Order in effect at the time the government ruled on the FOIA request, *Lesar v. United States Department of Justice,* 636 F.2d 472, 480 (D.C.Cir.1980), all of the CIA originated documents in this action shall be reviewed pursuant to Executive Order 12065 and all of the CIA documents which originated with other agencies shall be reviewed pursuant to Executive Order 12356 since this Order was in effect when the other agencies were asked to review them.

Under Executive Order 12065, information may be considered for classification only if it pertains, *inter alia,* to foreign government information, intelligence activities, sources, or methods, or foreign relations or foreign activities of the United States. If the information falls within one of these categories, it may be classified only if an original classification authority further determines that its unauthorized disclosure reasonably could be expected to cause at least *identifiable* (emphasis added) damage to the national security. Exec. Order 12065, § 1–302.

Under Executive Order 12356, in addition to the categories of information that were classifiable under Executive Order 12065, many more categories have been added. If information falls within one of those categories, it may be classified if an original classification authority further determines that the unauthorized disclosure of the information, either by itself or in the context of other information, reasonably could be expected to cause damage to the national security. Exec.Order 12356, § 1.3(b). In the instant action, Defendant claims that certain FBI and National Security Agency information appearing in CIA documents falls into at least one classification category: information concerning intelligence activities, sources and methods. Exec.Order 12356, § 1.3(a)(4).

In support of its contention that documents or portions thereof have been properly withheld pursuant to Exemption 1 and Executive Orders 12065 and 12356, Defendant has submitted, in addition to a "document disposition index" which is also relevant to the other exemptions asserted in this action, affidavits of Louis J. Dube, the Information Review Officer for the Director of Operations of the CIA, Gary L. Haegele, Special Agent of the Federal Bureau of Investigation, and Wendell B.

White, Acting Director of Policy of the National Security Agency. Because Plaintiff no longer challenges the showing of the National Security Agency, the Court need only address Exemption 1 as it is asserted by the CIA and the FBI.

■■■ The guidelines for exercise of judicial discretion concerning FOIA requests and claims of the national security exemption under § 552(b)(1) are well settled. Congress has directed the courts to make a *de novo* review of the agency's classification decision with the burden on the agency to justify non-disclosure. *Ray v. Turner*, 587 F.2d 1187, 1191–94 (D.C.Cir.1978); 5 U.S.C. § 552(a)(4)(B) (1976). In conducting this *de novo* review, however, the courts have also been instructed to give "substantial weight" to the agency affidavits. *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 697 n. 10 (D.C.Cir.1977); S.Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974).

■■■ Summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than mere conclusory statements, and if the affidavits are not called into question by contradictory evidence in the record or by evidence of agency bad faith. *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C.Cir.1980). The affidavits must demonstrate (1) that the agency followed proper classification procedures, and (2) that by its description the documents logically fall within the claimed exemption. *Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). The sufficiency of the affidavits is neither undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misrepresentation in other related cases. *Id.*

■■■ Although the Court is required to give substantial weight to agency affidavits, the FOIA itself provides for *in camera* inspections, 5 U.S.C. § 552(a)(4)(B), at the discretion of the Court. *In camera* proceedings are a last resort, however, particularly in national security situations. *Weissman v. Central Intelligence Agency*, 565 F.2d at 697; *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1013 (D.C. Cir.1976). "It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter." *Weissman v. Central Intelligence Agency*, 565 F.2d at 698. Furthermore, as the Court noted in *Weissman*, "where it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, it is unnecessary and often unwise for a court to undertake such an examination." *Id.*

Plaintiff in this action contends that the CIA affidavit and the affidavit of the FBI are not entitled to "substantial weight" and that the Court should conduct an *in camera* inspection of the documents in question or allow Plaintiff to conduct discovery. Plaintiff contends that the affidavits are not entitled to substantial weight because of agency bad faith, the conclusory nature of the affidavits, and because there is contrary evidence in the record.

Plaintiff points to a number of things as evidence of alleged bad faith on the part of the CIA. He initially contends that the CIA acted in bad faith in processing his FOIA requests. Second, Plaintiff suggests that evidence of bad faith on the part of the CIA in other FOIA actions is suggestive of CIA bad faith in this action. Third, Plaintiff suggests that a decision in 1964 to classify the Zapruder film indicates bad faith on the part of the CIA.

Plaintiff relies on the case of *McGehee v. CIA*, 697 F.2d 1095 (D.C.Cir.1983) in support of his allegation of CIA bad faith in the processing of his FOIA request. In that case, the Court declined to give substantial weight to CIA affidavits because there was evidence of CIA bad faith in the processing of plaintiff's request. Factors which persuaded the Court of such bad faith were the processing time of plaintiff's

request, defendant failed to take any action on the request until it was ordered to do so by the Court, and the defendant failed to disclose to plaintiff that it was using the date of plaintiff's amended FOIA request as the cut-off date of its search. *Id.* at 1113. The Court stated:

> Our conclusion is founded principally on the combination of two facts: First, it took almost two and one-half years before the CIA processed McGehee's reasonably straightforward request; indeed, the agency made no substantive response until compelled to do so by order of the District Court. Second, the CIA failed to disclose the fact that it was using December 22, 1978, as a cut-off date. The cumulative weight of this evidence of bad faith is enough to vitiate the credit to which agency affidavits are ordinarily entitled.

*Id.*

Plaintiff in this action alleges that the evidence shows that although Defendant counseled him to be patient and that it was working on his request, there was no work done on his request between the years 1976–1982. He further argues that not a single document was processed and approved for release until more than four years after the documents were numbered and more than six years after Plaintiff's request. He further contends that none of the documents were approved for release until one month after he filed his complaint in this action and none were released until one month later.

■ The Court is convinced that Plaintiff in this action has not presented evidence sufficient for a finding of agency bad faith. In *McGehee*, the Court made it clear that its finding of bad faith was based upon the cumulative weight of two factors: a long delay and a failure to disclose its date of request cut-off date. In this action, Plaintiff only points to delay. This Circuit has noted that "delay alone cannot be said to indicate an absence of good faith." *Goland v. CIA*, 607 F.2d 339, 355 (D.C.Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). The Court in

*McGehee* did not decide the question whether the long delay by itself, would be evidence of bad faith sufficient to impugn the credibility of the agency's affidavit. *McGehee*, 697 F.2d at 1113 n. 83.

The Court finds that the delay in this action is not sufficient to impugn the credibility of the agency's affidavit. The CIA has acknowledged and explained the delays in the Dube affidavit. It blames the delays on the fact that (1) the documents were subject to congressional and presidential commissions which absorbed the limited review staff; (2) the number of people with knowledge of the information has decreased as the Kennedy assassination, as an event, becomes more historic; and (3) the reviewing officers are also current classification officers. Based on these circumstances, the agency affidavit is not called into question because of bad faith in the processing of Plaintiff's request.

■ Similarly, Plaintiff's contention that evidence of CIA bad faith in other FOIA litigation is suggestive of bad faith in this action is without merit. Evidence of bad faith in this action is without merit. Evidence of bad faith in other CIA FOIA litigation has no relevance at all to this action. "The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other related cases." *Hayden v. National Security Agency/Central Security Service*, 608 F.2d at 1387.

■ For the same reasons, Plaintiff's suggestion that a decision by the CIA in 1964 to classify the Zapruder film indicates bad faith on the part of the CIA must also fail. Past agency misconduct is not relevant to this action. *Hayden, supra.* In addition, Dube's affidavit explains that the classification decision, made nearly twenty years ago, was intended to protect the fact that the CIA had a copy of this film and to insure against dissemination outside the agency. The affidavit further states that the film was used only for training purposes, and is no longer in the CIA's posses-

sion. Finally, Defendant points out that the fact of the CIA's former possession of the film is not now classified, a fact borne out by the release of certain documents to Plaintiff which describe the film's former classified status.

■ Next, Plaintiff argues that the conclusory nature of Defendant's affidavit requires that this Court not give substantial weight to such affidavits. Plaintiff points to two examples as evidence of the conclusory nature of the Dube affidavit. First, Plaintiff points to the description given to document 1461–492–FB. This is a document that has been withheld in its entirety. Plaintiff asserts that "it seems unlikely that this sufficiently describes the documents contents." The description given is "information identifying a CIA staff employee, exemption (b)(3), paragraphs 28 and 19", "information identifying a CIA organizational component, exemption (b)(3), paragraphs 28 and 29", "classification and information control markings, paragraph 9." Document Disposition Index at 38.

As another example of the conclusory nature of Defendant's affidavit, Plaintiff points to document 1465–1080. This is a 133 page document that has been withheld in its entirety. This document has been withheld in its entirety based on a number of exemptions. Plaintiff takes issue with Defendant's statement in the document disposition index which concedes that not all portions of the document are exempt but asserts that "the release of any portions that clearly have no relevance in terms of disclosing intelligence sources or intelligence methods would not result in the release of any intelligible information." Document Disposition Index at 40–41.

In *Church of Scientology of California, Inc. v. Turner,* 662 F.2d 784 (D.C.Cir.1980), the United States Court of Appeals for the District of Columbia Circuit addressed the question of the sufficiency of agency affidavits submitted as a *Vaughn* index. Finding the agency affidavit to be sufficient for the grant of summary judgment, the Court initially noted that "the fact that the agency has not disclosed in its affidavits the information the documents contain need not lead to the conclusion that the affidavits are inadequate." *Id.* at 786. According to the Court, the fact that the affidavits "provide a reviewing judge with a wealth of information" is important. The Court noted:

> The affidavits include a lengthy general discussion of the adverse consequences that could flow from releasing the information withheld. The release of any particular document, the CIA warned could lead to one or more of the following harmful results: breaching agreements with foreign intelligence services, refusal of intelligence sources to share information in the future, revelation of intelligence-gathering methods, and disclosure of the identity of foreign or CIA intelligence operatives either directly or by inference from the content of the information.... Appellant has adduced no evidence tending to undercut the plausibility of this argument.

*Id.* After noting that the affidavits in issue (1) provided a paragraph by paragraph analysis of each of the documents withheld in whole or in part; (2) indicated the sender, the recipient, the source of the information and why partial release was or was not possible; and (3) indicated which of the adverse consequences could occur upon release, the Court found that "these affidavits provided the kind of detailed, scrupulous description that enables a District Court judge to perform a searching *de novo* review." *Church of Scientology of California, Inc. v. Turner,* 662 F.2d at 786. Based on this standard, the Court finds that the combination of the "document disposition index", Dube's affidavit, and the affidavit of Haegele is a sufficient description of the documents in issue.

Similarly, Plaintiff's quarrel with Defendant's statement with reference to document 1465–1080 that "release of any portions that clearly have no relevance in terms of disclosing intelligence sources or intelligence methods would not result in the release of intelligible information" is without merit. 5 U.S.C. § 552(b) provides

that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Recognizing that the precise meaning of the term "reasonably" when used in conjunction with "segregable" has not yet been settled, the United States Court of Appeals for the District of Columbia Circuit has stated that it looks to a combination of intelligibility and the extent of the burden of editing or segregating the non-exempt material. *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 322 n. 16 (D.C.Cir.1982), *citing, Simpson v. Vance*, 648 F.2d 10, 17 (D.C.Cir.1980); *Mead Data Central, Inc. v. Department Air Force*, 566 F.2d 242, 281 and n. 55 (D.C.Cir.1977). Given that this Circuit's interpretation of "reasonably segregable" connects it with the concept of intelligibility, Defendant's statement that "release of any portions [of document 1465–1080] that clearly have no relevance in terms of disclosing intelligence source or intelligence methods would not result in the release of intelligible information" does not render the Dube affidavit a "conclusory" affidavit. Whether Defendant has met its burden of showing that all reasonably segregable portions of documents have been released is another issue which will be discussed below.

The Court is persuaded that the affidavits presented by the CIA in this case are not like the affidavits presented in *Allen v. CIA*, 636 F.2d 1287, 1291 (D.C.Cir.1980), *overruled on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C.Cir.1981), where the Court found that the affidavits were "conclusory, merely reciting statutory standards." In that case the Court was disturbed that the affidavits presented no basis on which the trial court might conclude that the procedural requirements of Executive Order 12065 had been satisfied because the affidavits did not indicate the identity of the original classifier or the date or event for declassification or review. *Id.* at 1291. Similarly, the affidavits presented no basis for the trial court to conclude that

the documents were classified in conformity with the substantive requirements of Executive Order 12065 because they failed to indicate whether disclosure of the documents would hasten the "eventual identification of intelligence methods" that would likely occur even without disclosure of the documents. *Id.* at 1293. The Dube affidavits fare much better than those in *Allen* and the Court finds that they are not conclusory.

■ Finally, Plaintiff argues that the Court should not give substantial weight to the agency affidavits because there is contrary evidence in the record. First, Plaintiff argues that the passage of time undermines the CIA's national security claims and that any claims that release of such information will cause harm is purely speculative. Plaintiff's assertion that the passage of time undermines the CIA's national security claims must fail in light of *Afshar v. Department of State*, 702 F.2d at 1138 n. 18, in which the Court of Appeals rejected the suggestion that the passage of time and change of circumstances should trigger a classification review. Moreover, in the instant action, the Dube affidavit states that the CIA has in fact had the opportunity to take into account the passage of time and the effect of congressional studies in its national security determinations.

■ Plaintiff's argument that Defendant's declaration speaks only in terms of speculation with regard to national security consequences and, therefore, is conclusory is also without merit. In fact, courts have repeatedly held that the very certitude which Plaintiff seems to feel is lacking is actually unreasonable; in these matters, there is "necessarily a region for forecasts in which informed judgment as to potential harm should be respected." *Gardels v. Central Intelligence Agency*, 689 F.2d 1100, 1106 (D.C.Cir.1982). Plaintiff's criticism of Defendant's declaration for being cast in terms of speculation, ignores that courts must take into account ... that any affidavit "of threatened harm to national security will always be speculative to some

extent..." *Halperin v. Central Intelligence Agency,* 629 F.2d at 149. To strip the agency of its prerogative to engage in any prediction whatsoever, and insist on the stringency of description advocated by Plaintiff would undercut the very "purpose of the national security exemptions..." *Id.*

Finally, in support of his contention that there is contrary evidence in the record, Plaintiff points to document numbered 603–256 as an example of an inconsistent release of information. He contends that Defendant has withheld information from him that was officially released some years ago. He points out that the 1982 release withheld two phrases which had been released previously. In paragraph 7 of the document, the CIA deleted the information that Richard Helms had cautioned the Warren Commission that the CIA's "staff officer" in Mexico City would be "under State Department cover." The second phrase deleted from the copy of this document provided Plaintiff is "the Mexico City Station," which appears in paragraph 9.

In response to Plaintiff's allegation concerning document 603–256, Defendant filed a supplemental affidavit of Louis Dube on March 18, 1983. In that affidavit Dube admits that it was an error for the agency to delete such information given that the agency had released such information to the public earlier. The Court finds that the Dube affidavit adequately addresses the arguments of Plaintiff.

Furthermore, in *Allen v. CIA,* 636 F.2d 1297–99, the Court identified the following factors to be considered by the trial judge when deciding whether or not to conduct an *in camera* inspection of documents: (1) judicial economy; (2) conclusory nature of the agency affidavits; (3) bad faith on the part of the agency; (4) disputes concerning the contents of the documents; (5) an agency request for an *in camera* inspection; and (6) a strong public interest in disclosure. In this matter, the Court finds that the one error pointed out by Plaintiff does not justify an *in camera* inspection given the factors set forth in *Allen.*

Given the discussion set forth above, the Court concludes that Plaintiff has pointed to no evidence which is sufficient to justify that this Court not give substantial weight to the agency affidavits. The Court finds that the affidavits are entitled to substantial weight and that an *in camera* inspection in this action is unwarranted.

Plaintiff next argues that even if the agency affidavits are entitled to substantial weight, summary judgment for Defendant is inappropriate because the CIA has not sustained its burden of demonstrating entitlement to the exemptions it claims. With respect to Exemption 1, Plaintiff takes issue with many items.

Initially, Plaintiff argues that the affidavit of Defendant fails to state that Defendant complied with the procedural requirements of Executive order 12065. Section 1–502 of Executive Order requires certain procedures for documents classified for more than six years. Specifically, the Order provides:

Documents classified for more than six years shall also be marked with the identity of the officials who authorized the prolonged classification. Such documents shall be annotated with the reason the classification is expected to remain necessary, under the requirements of Section 1–3, despite the passage of time. The reason for the prolonged classification may be stated by reference to criteria set forth in agency implementating regulations. These criteria shall explain in narrative form the reason the information needs to be protected beyond six years. If the individual who signs or otherwise authenticates a document also is authorized to classify it, no further annotation or identity is required.

In addition to the above section, § 3–303 of the Executive Order provides:

It is presumed that information which continues to meet the classification requirements of Section 1–3 requires continued protection. In some cases, however, the need to protect such information may be outweighed by the public interest in disclosure of the information,

and in these cases the information should be declassified. When such questions arise, they shall be referred to the agency head, a senior agency official with responsibility for processing Freedom of Information Act requests or Mandatory Review requests under this Order, an official with Top Secret classification authority, or the Archivist of the United States in the case of material covered in Section 3–503. That official will determine whether the public interest in disclosure outweighs the damage to national security that might reasonably be expected from disclosure.

Plaintiff contends that the Dube affidavit fails to state whether Defendant complied with the procedures of § 1–502 and § 3–303. With respect to § 1–502, Plaintiff's argument is without merit. Paragraphs 8–9 of the Dube affidavit specifically attests to the procedural requisites of § 1–502.

Plaintiff's argument that the Dube affidavit is deficient because it fails to indicate whether the balancing provisions of § 3–303 were applied, must also fall in light of *Afshar v. Department of State*, 702 F.2d 1125 (D.C.Cir.1983). In that case, plaintiff argued that the documents as to which the government claimed exemption 1 were not properly classified within the meaning of the exemption because the government failed to balance the public interest in disclosure against the damage to national security that the disclosure might reasonably be expected to cause as required by Section 3–303 of Executive Order 12065. After oral argument in the appeal of the case President Reagan issued Executive Order 12356 which repealed the balancing provisions of Executive Order 12065. Recognizing that in the earlier case of *Lesar v. United States Department of Justice*, 636 F.2d 472, 480 (D.C.Cir.1980), the Court held that the classification of the documents should be assessed under the Executive Order in force at the time the responsible official finally acts, the Court noted that in *Lesar* the Court did not discuss what Executive Order the government would be directed to apply on remand if its original

classification were found to have been faulty.

▮ After noting that the Executive Branch may apply a new Executive Order to documents in a pending suit and that FOIA and the then applicable Executive Order do not create substantive rights that vest in Plaintiff at the time of final administrative action, the Court in *Afshar* held that the issue of whether information withheld under the FOIA exemption 1 was properly classified in light of the agency's failure to balance the public interest in disclosure against damage to the national security that disclosure might reasonably be expected to cause was mooted by issuance of the new Executive Order revoking the balancing provision of Executive Order 12065, since, assuming that balancing was required when the government acted, the Court could no longer award the relief Plaintiff sought, in light of the issuance of the superseding Executive Order. *Afshar*, 702 F.2d 1135–1137.

In light of *Afshar*, assuming that Defendant failed to balance the interests as provided in § 3–303, the Court here could no longer award the relief Plaintiff seeks, because of the new Executive Order. Defendant's failure to perform the balancing test, assuming that it did, amounts to only harmless error in this action.

▮ Next, Plaintiff takes issue with Defendant's showing that it meets the substantive criteria of Executive Order 12065. Plaintiff argues that the passage of time and the mass publicity over the years makes it difficult to believe that release of the information could still possibly cause identifiable damage to the national security. Initially, with respect to the documents reviewed under Order 12356, it is important to note that the new Executive Order only requires that there be a showing that disclosure "reasonably could be expected to cause identifiable damage to the national security." 47 Fed.Reg. at 14876. With respect to documents reviewed under 12056, given that the Court has found that the agency affidavit passes judicial muster,

it is only appropriate that the Court defer to the expert agency's decision. *Halperin v. Central Intelligence Agency,* 629 F.2d at 148.

The Dube affidavit and the Haegele affidavit assert that the records classified by the CIA and the FBI fall into two categories: intelligence activities, sources and method; and information concerning foreign relations or foreign activities of the United States. Under Executive Order 12065, only the unauthorized disclosure of foreign government information or the identity of a confidential foreign source is presumed to cause at least identifiable damage to the national security. § 1–303. Executive Order 12356 provides that the unauthorized disclosure of foreign government information, the identity of a confidential source, or intelligence sources or methods is presumed to cause damage to the national security, § 1.3(c).

The majority of the information classified by the CIA and FBI and withheld pursuant to the Exemption 1 is labelled as "intelligence sources and methods." Plaintiff contends that this label is susceptible to varying interpretations, some of which are unacceptably broad. He specifically points to the Dube affidavit at paragraphs 18 and 22 as evidence of the impermissible breadth of such label. He also points to document numbered 1560–1115 and argues that the name of a newspaper was impermissibly deleted as an intelligence source.

In *Sims v. CIA,* 642 F.2d 562 (D.C.Cir. 1980), *later appeal,* 709 F.2d 95 (D.C.Cir. 1983), *cert. granted, Central Intelligence Agency v. Sims,* — U.S. —, 104 S.Ct. 1438, 79 L.Ed.2d 759 (1984), *cert. granted, Sims v. Central Intelligence Agency,* — U.S. —, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984), the Court construed the term "intelligence source and method" as it is used in 50 U.S.C. § 403(d)(3), a withholding statute under Exemption 3 of FOIA. The Court defined an "intelligence source" as "a person or institution that provides, has provided, or has been engaged to provide the CIA with information of a kind the agency needs to perform its intelligence function

effectively, yet could not reasonably expect to obtain without guaranteeing the confidentiality of those who provide it." *Id.* at 571. The Court expressed its concern that the term not be construed too broadly as to apply to periodicals, including *Pravda* and *The New York Times,* "from which it culls information that informs its view of foreign nations and their policy intentions." *Id.* at 569. The construction of the term "intelligence source" as set forth above was reaffirmed in *Holy Spirit v. Central Intelligence Agency,* 636 F.2d 838, 843–44 (D.C.Cir.1980) and *McGehee v. Central Intelligence Agency,* 697 F.2d 1095, 1113 n. 78 (D.C.Cir.1983).

The Defendant states in its affidavit that the intelligence methods that have been used by Defendant and withheld from release include the following: CIA stations abroad, cryptonyms and pseudonyms, information processing and filing instructions, and the names of CIA employees or organizational components. With respect to Plaintiff's allegation that document 1560–1115 deletes the name of a newspaper as an intelligence source, Defendant accurately points out that such name was not deleted as an intelligence source but as an intelligence method. Defendant sets forth in its papers that had it released the identity of this media outlet, the existence of a CIA station location would have been apparent.

Plaintiff has not pointed to any other evidence that supports its contention that the Defendant has used the term "intelligence source or method" broadly. The affidavits submitted in support of the motion suggest that the term was only used to withhold information about "a person or institution that provides, has provided, or has been engaged to provide the CIA with information of a kind the agency needs to perform its intelligence function effectively, yet could not reasonably expect to obtain without guaranteeing the confidentiality of those who provide it." *Sims v. Central Intelligence Agency,* 709 F.2d 95, 97 (D.C.Cir.1983).

Despite Plaintiff's objections, the Court finds the Defendant has clearly demonstrated that its review of the classified material in issue was thorough, proper, and in compliance with the substantive and procedural requirements of Executive Orders 12065 and 12356. The declaration of Louis Dube and Special Agent Haegele are sufficient to justify non-disclosure pursuant to Exemption 1 of the FOIA and the entry of summary judgment for Defendant with respect to this exemption. The declaration contains reasonably specificity of detail rather than mere conclusory statements. It demonstrates that the agency followed proper classification procedures and that by its description the documents logically fall within the claimed exemption.

### EXEMPTION 3

Exemption 3 of the FOIA provides that the disclosure requirements of FOIA do not apply to matters that are:

specifically exempted from disclosure by statute (other than section 552b of this title [5 U.S.C. § 552b]), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

The Central Intelligence Agency, the National Security Agency, and the Immigration and Naturalization Service have withheld documents pursuant to Exemption 3. Plaintiff does not challenge the exemption claim as it is asserted by the National Security Agency and the Immigration and Naturalization Service. Plaintiff does take issue, however, with the exemption 3 claim of the Central Intelligence Agency.

Plaintiff relies on 50 U.S.C. §§ 403(d)(3) and 403g as its withholding statute under Exemption 3. It is clear that these statutes are exemptive statutes under Exemption 3. *Halperin,* 629 F.2d at 147. 50 U.S.C. § 403(d) provides in relevant part that:

the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure.

50 U.S.C. § 403g provides:

In the interest of the security of foreign intelligence activities of the United States and in order to further implement the provision of Section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from section 654 of Title 5, and the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

Defendant claims that documents and portions thereof held pursuant to these two statutes contain information which would disclose intelligence sources and methods. According to Defendant, some documents have no description because any description of the document or the information contained within would reveal the information to be protected. Plaintiff challenges the CIA invocation of this exemption on the same grounds that he objects to the invocation of Exemption 1. For the reasons set forth above under the discussion of Exemption 1, the Court finds that Plaintiff's objections are without merit.

Finally, with respect to Exemption 3, Plaintiff objects to the fact that the CIA has withheld filing and routing instructions. Without citing any support, Plaintiff argues that file numbers and routing instructions are "outside the scope of intelligence methods protected under Exemption 3 and 50 U.S.C. § 403(d)(3)." Such arguments by Plaintiff are merely "conclusory denials of the Agency's position on the dangers of foreign intelligence ... and are inadequate to raise a triable issue..." *Gardels v. CIA,* 689 F.2d 1100, 1106 (D.C. Cir.1982). In fact, the Dube affidavit describes in detail why information processing and filing instructions are confidential intelligence methods that must be protected pursuant to 50 U.S.C. § 403(d)(3). The

fact that the agency previously relied solely on Exemption 2 to withhold this type of information suggests nothing except that prior to the decision in *Allen v. CIA*, 636 F.2d 1287 (D.C.Cir.1980), the CIA believed that Exemption 2 was applicable. This hardly undermines the CIA's present invocation of Exemption 3. Accordingly, the Court finds that Exemption 3 has been properly invoked to withhold file numbers, and filing and routing instructions and that summary judgment should be granted for Defendant on the Exemption 3 claims.

## EXEMPTION 5

██ One document, 1648–452–C, has been withheld in its entirety pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5). Exemption 5 protects from disclosure documents and portions of documents that are:

> inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

This exemption protects inter-agency or intra-agency memoranda that are not available through civil discovery to a private party in litigation with the agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–49, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975).

The exemption under § 552(b)(5) incorporates two privileges available to the government in civil litigation: (1) the deliberative process privilege, which protects advice, recommendation, and opinions that are part of the decision making process of the government; and (2) the attorney-client privilege and attorney work-product privilege, which is generally available to all litigants. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 149, 95 S.Ct. at 1515. The purpose of the deliberative process component of this exemption is to encourage the free and candid expression of ideas, advice, recommendation and opinions in the deliberative or policymaking processes. *Mead Data Central, Inc. v. Department of Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). Defendant in this action relies on this component of the exemption.

██ In order for an agency to rely on Exemption 5, the document in issue must be predecisional or actually antecedent to the adoption of agency policy and must actually be related to the process by which policies are formulated. *Jordan v. U.S. Department of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978), *overruled on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir.1981). The material must be deliberative not just in the sense that the author's thought processes are manifest, but the deliberation must address a process of government about which a final decision is intended to be made. *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C.Cir.1975). The Defendant must specify what particular importance the material had in the decision making process, *i.e.*, "whether it is an essential element of that process or possibly a peripheral item which 'beefs up' a position with cumulative materials." *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir.1980). In addition, Defendant must show by specific and detailed proof that disclosure would defeat rather than further the purposes of FOIA. *Mead Data Central, Inc. v. Department of Air Force*, 566 F.2d at 258.

Plaintiff contends that the Dube affidavit at paragraph 32 is an insufficient description to support the invocation of Exemption 5 with respect to document numbered 1648–452–C. In addition, Plaintiff asserts that given that the document is a blind memo and is neither signed or addressed, the purpose underlying Exemption 5, which is to encourage open and frank discussions between a subordinate and chief on policy matters would not be violated. He also claims that since the memo is neither addressed nor signed, Defendant has not established that it is strictly an internal memo.

██ Plaintiff is correct in its assertion that the Dube affidavit is not sufficient to support the invocation of Exemption 5 with respect to document numbered 1648–352–C. Defendant's affidavit does not provide suf-

ficient proof that this document was predecisional or actually antecedent to the adoption of agency policy and actually related to the process by which policies are formulated. Moreover, given the anonymity of the document, Defendant has failed to show by specific and detailed proof that disclosure of this document would defeat rather than further the purposes of FOIA. *Mead Data Central, Inc. v. Department of Air Force*, 566 F.2d at 258. Accordingly, Defendant's motion for summary judgment with respect to document 1648–352–C and the invocation of Exemption 5 is denied.

## EXEMPTION 6

5 U.S.C. § 552(b)(6) provides that the disclosure requirements of FOIA are not applicable to:

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

The Defendant has invoked Exemption 6 to withhold 41 letters which were collected because the names of the originators or addresses were "similar to, but not the same as, known relatives, friends or acquaintances of Lee Harvey Oswald or his wife, Marina." Plaintiff contends that Defendant cannot invoke Exemption 6 with respect to these letters because it has failed to demonstrate that the invasion of personal privacy outweighs the public interest in disclosure.

As most recently enunciated in *Washington Post Co. v. Department of Health and Human Services*, 690 F.2d 252, 261 (D.C.Cir.1982), in determining whether the invocation of exemption 6 is proper, the Court must first determine whether the information in question is contained in "personnel" or "medical" or "similar" files. Next the court must consider whether disclosure would create an invasion of privacy, and if so, how serious an invasion. Finally, the court must balance any public interest in disclosure against the privacy interest to determine whether an invasion of privacy is clearly unwarranted. It must be noted that "under Exemption 6,

the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Washington Post Co. v. Department of Health and Human Services*, 690 F.2d at 261. In Exemption 6 cases the Court is instructed to "tilt the balance [of disclosure interests against privacy interests] in favor of disclosure." *Id., quoting, Ditlow v. Shultz*, 517 F.2d 166, 169 (D.C. Cir.1975).

In *Department of State v. The Washington Post Co.*, 456 U.S. 595, 600, 102 S.Ct. 1957, 1960, 72 L.Ed.2d 358 (1982), the Supreme Court found that the term " 'similar' files was to have a broad, rather than a narrow, meaning." The Court determined that Congress had not "meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information." The Court stated:

> Rather, [t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual. H.R.Rep. No. 1497, *supra*, at 11. When disclosure of information which applies to a particular individual is sought from government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of personal privacy.

*Id.*

Initially, the Court finds that the personal information withheld by Defendant contains "information which applies to a particular individual" and such information is found within CIA files. Therefore, these records are "similar files" within the meaning of Exemption 6.

Once the Court determines that the information at issue is contained within "similar files", the Court must then identify the public and private interests involved and conclude with a weighing of such interest. The CIA has invoked this exemption to withhold information that appears in 41 letters which were collected because the names of the originators or addresses were "similar to, but not the same as, known relatives, friends or acquaintances of Lee Harvey Oswald or his wife, Marina." Giv-

en the nature of such information, the fact that they were private personal letters from or to such individuals, there can be no reasonable dispute that these individuals have a privacy interest in maintaining confidentiality of the information sought. The harm to these individuals or their families of disclosing the contents of personal letters they wrote or received is easily understood. Inasmuch as none of these individuals had any relation to the Kennedy assassination, the disclosure of the letters could cause great embarrassment to them or their families. The privacy interest involved, therefore, is substantial.

 As the final step in its analysis the Court must identify the public interest in disclosure and weigh that interest against the privacy interest discussed above. *Washington Post Company v. U.S. Department of Health and Human Services,* 690 F.2d at 261. Plaintiff argues that the public has almost unending interest in the assassination of President Kennedy and that, therefore, the public interest in disclosure outweighs the privacy interest discussed above. Although the Court acknowledges that the public has an interest in the assassination of President Kennedy, such interest does not outweigh the privacy interest of the individuals discussed above. All of the withheld information appears in 41 letters which were collected because the names of the originators were "similar to, but not the same as known relatives, friends or acquaintances of Lee Harvey Oswald or his wife, Marina." None of these individuals, therefore, were involved with Lee and Marina Oswald or had any relation to the Kennedy assassination. The Court finds it difficult to see any public interest in disclosure of information concerning these individuals since they are not connected to the assassination of President Kennedy and had their personal letters intercepted only because their names were similar to but not the same as relatives, friends, or acquaintances of Lee and Marina Oswald. This is an instance where the privacy interest outweighs any public interest in disclosure.

## OTHER ISSUES

 Plaintiff contends that Defendant has not demonstrated that all segregable factual material has been released. He claims that the CIA is improperly withholding non-exempt segregable portions of documents. He specifically points to documents numbered 1465–1080. Plaintiff's quarrel with the description given by Defendant for this document was previously addressed in the discussion under Exemption 1. As stated above, given that this Circuit's interpretation of "reasonably segregable" connects it with the concept of intelligibility, *See Yeager v. Drug Enforcement Administration,* 678 F.2d 315, 322 n. 16 (D.C.Cir.1982), the Court finds that Defendant has met its burden of showing that all reasonably segregable portions of documents have been released. Based upon the record that is before the Court there is no basis for the Court to conduct an *in camera* inspection to search for segregable non-exempt material. The affidavits contain a thorough analysis of each document and there are no sweeping claims of exemption. As the Court noted in *Weissman v. Central Intelligence Agency,* 565 F.2d 692, 697–698 (D.C.Cir.1977):

In every FOIA case, there exists the possibility that Government affidavits claiming exemptions will be untruthful. Likewise, in every FOIA case it is possible that some bits of non-exempt material may be found among exempt material, even after a thorough agency evaluation. If, as appellant argues, these possibilities are enough automatically to trigger an *in camera* investigation, one will be required in every FOIA case.... neither the legislative history nor the court decisions have indicated that it was appropriate for the District Courts to undertake a line-by-line analysis of agency records in each case. This Court has noted the difficulty of such a task, and held that such an investment of judicial energy was not justified or even permissible. *Vaughn v. Rosen, supra* [484 F.2d 820] at 825 [ (D.C.Cir.1973) ]. 'The burden has been placed specifically by statute on

the Government.' *Ibid.* It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matters.

Finally, Plaintiff once again challenges the failure of the CIA to include in the Dube affidavit a description of the documents originally numbered 1004–1129. Defendant previously responded to this point in its opposition to Plaintiff's Motion to Stay Consideration of Defendant's Motion for Summary Judgment Pending Completion of Discovery Pursuant to Rule 56(f) and to Plaintiff's Motion for a Supplemental *Vaughn v. Rosen* Index which was filed January 7, 1983. The Court denied Plaintiff's motion seeking a supplemental *Vaughn* index that would include these documents after considering the very same arguments that Plaintiff is raising again here. The basis of that denial was that all of these documents were indexed, and the exemptions upheld, in *Fensterwald v. CIA,* Civil Action No. 75–897 (D.D.C. July 18, 1978), *vacated as moot on procedural grounds,* (D.D.C.1978). Nothing has changed since this Court's earlier decision, therefore, the Court declines to alter such ruling.