**Linda HUNT, Plaintiff,**

**v.**

**U.S. MARINE CORPS, et al., Defendants.**

**Civil Action No. 94–2317 SSH.**

United States District Court,
District of Columbia.

Aug. 7, 1996.

James Hiram Lesar, Washington, DC, for Plaintiff.

Asst. U.S. Atty. Cynthia Ann Schnedar, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion for summary judgment, plaintiff's opposition, cross-motion for summary judgment, and motion to compel a further search, and defendants' reply and opposition to plaintiff's cross-motion.[1] Plaintiff brings this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1994). She seeks the disclosure of documents which are held by defendants, the United States Marine Corps (Marine Corps) and the Department of Defense (DoD). Defendants contend that since all documents withheld from plaintiff are exempt from release under the FOIA, there is no genuine issue of material fact and defendants are entitled to summary judgment as a matter of law. Upon consideration of the entire record, the Court grants defendants' motion for summary judgment and denies both plaintiff's cross-motion for summary judgment and her motion to compel a further search. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed.R.Civ.P. 52(a), the Court nonetheless sets forth its reasoning.

### I. BACKGROUND

Plaintiff, a freelance journalist, seeks the disclosure of numerous documents concerning Lieutenant Colonel Oliver North which have been withheld from her by the Marine Corps. When this suit was filed, North was engaged in an election for the office of United States Senator from Virginia. The immediacy and significance of that election prompted plaintiff to file this lawsuit, as well as a motion for a temporary restraining order, in an attempt to compel the Marine Corps to turn over the requested documents. Although North was defeated in his senatorial bid, plaintiff continues to press her claim for the release of the withheld documents, contending that North may seek public office in the future.

On March 3, 1994, plaintiff submitted an expedited FOIA request to United States Marine Corps Headquarters (HQMC) for four categories of records pertaining to North, along with a request for a waiver of search fees and copying costs. Specifically, plaintiff sought copies of (1) North's 201 personnel file and any other personnel records relating to him; (2) North's DD–398 Statement of Personal History form; (3) all of North's DD–1610s (Request and Authorization for TDY Travel); and (4) all records

---

1. The Court granted plaintiff several lengthy extensions of time to file her reply to defendants' opposition. Finally, several months after the last allowed extension of time expired, the Court issued an Order requiring plaintiff to file her reply by July 5, 1996. Plaintiff failed to file her reply prior to the deadline and thus waived her right to file a reply.

pertaining to any alleged disciplinary infraction, alleged violation of any military code of conduct, or alleged violation of criminal law by North. Defs.' Mot. for Summ.J., Attach. A. On March 4, 1994, plaintiff also requested that the USMC National Personnel Records Center in St. Louis, Missouri, release "all [its] records pertaining to Oliver North." *Id.*, Attach. B. The Records Center released some information to plaintiff on March 15, 1994, and forwarded her request to HQMC for a determination on whether the remainder of the information could be released. *Id.*, Attach. C. On August 2, 1994, HQMC released non-exempt documents to plaintiff in response to her request. However, HQMC informed her that some documents had been withheld pursuant to FOIA Exemptions 2, 5, and 6, 5 U.S.C. § 552(b)(2), (b)(5), (b)(6), and that HQMC had no DD Form 1610s on North. *Id.*, Attach. E.

On September 15, 1994, plaintiff administratively appealed both HQMC's withholding of documents and the adequacy of its search. *Id.*, Attach. F. Although plaintiff's appeal was received by the Department of the Navy's administrative appeal authority on September 19, 1994, the statutory time for the agency's reply passed. On October 26, plaintiff sued the Marine Corps and the DoD, seeking a temporary restraining order. *See* Pl.'s Compl.; Mot. for T.R.O. After hearing argument on plaintiff's motion for a temporary restraining order, the Court denied it on October 28, 1994.

On October 31 and November 2, 1994, the General Litigation Division, Office of the Judge Advocate General, requested that HQMC and the National Naval Medical Center (NNMC), Bethesda, treat the plaintiff's declaration in support of her motion for a temporary restraining order as an initial request for any medical records on North. Defs.' Mot. for Summ.J., Attach. H. On November 1, HQMC informed plaintiff that it possessed North's outpatient records, and on November 4, NNMC informed plaintiff that it had located responsive records within the Health Care Records System, but each office took the position that the records were exempt from release under FOIA Exemption 6. *Id.*, Attach. I, J. On November 4, 1994,

the Deputy Assistant Judge Advocate General of the Navy responded to plaintiff's administrative appeal by releasing some additional documents, while denying release of the remainder of the documents. The Deputy Assistant also conveyed to plaintiff the Navy's conclusion that the government had performed an adequate search. *Id.*, Attach. K. Plaintiff did not administratively appeal the denials by HQMC and NNMC of access to North's medical records. *Id.*, Attach. L.

On March 3, 1995, defendants filed a motion for summary judgment. Defendants submitted a *Vaughn* index along with their dispositive motion, characterizing the documents which were responsive to plaintiff's requests and which were withheld under various FOIA exemptions. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Plaintiff filed an opposition, a cross-motion for summary judgment and a motion to compel a further search on August 28, 1995. On October 20, 1995, defendants filed a reply to plaintiff's opposition and an opposition to plaintiff's cross-motion. In their reply to plaintiff's opposition, defendants submitted an additional affidavit to explain their search. *See* Decl. of Barbara L. Thompson (hereinafter "Thompson Decl."). Plaintiff failed to file a reply to defendants' opposition in the time allotted by the Court, and therefore waived her right to file her response. *See supra* n. 1.

## II. *ANALYSIS*

In moving for summary judgment in a FOIA action, the moving party must show that no genuine dispute of material fact exists and that it is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevail against a request under the FOIA, a defending agency must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *National Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C.Cir.1973). If the government agency seeks summary judgment based on an exemption in the FOIA statute, "it must pro-

vide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977). The government may submit detailed affidavits to demonstrate how requested information falls within a claimed exemption. If the affidavits are sufficiently detailed, nonconclusory, and uncontradicted by the record, and if no evidence in the record exists of bad faith, the court may grant summary judgment without an *in camera* examination of the documents. *Hayden v. National Sec. Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

Defendants claim that sixty-five documents were properly withheld under FOIA Exemptions 2, 5, and 6. Exemption 2 of the FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 5 protects "interagency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" where the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Plaintiff challenges the adequacy of defendants' search and the withholding of documents under these exemptions.

## A. *Adequacy of the Search*

■ Plaintiff initially contends that defendants' search for responsive documents was inadequate. Plaintiff requests that defendants submit an additional affidavit explaining their search, or alternatively that the Court should allow plaintiff to take discovery regarding the adequacy of the search. Defendants attached a detailed affidavit to their reply which described their search. *See* Thompson Decl. The Court finds that defendants have fulfilled plaintiff's request for an

additional affidavit describing their search, and therefore denies plaintiff's request for discovery. Furthermore, the Court finds that defendants have met their burden of showing that they made a good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the desired information. *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990). Defendants demonstrated through the declaration of Barbara L. Thompson, the Head of HQMC's FOIA Program, that they performed a comprehensive search for all the requested documents by directing plaintiff's requests to the four agency offices reasonably expected to hold the responsive information. Thompson Decl. at 2, 5. In addition, Thompson stated that she conducted a personal search for North's DD Form 1610's, *id.* at 3, as well as a subsequent search for North's medical records. As plaintiff offers no evidence to show that the agency's search was not undertaken in good faith, *see Maynard v. CIA,* 986 F.2d 547, 560 (1st Cir.1993), the Court finds that defendants' search was adequate.

## B. *Exemption 2*

Although there had been a dispute over two documents withheld by the government under 5 U.S.C. § 552(b)(2), defendants subsequently released those documents, rendering this issue moot.

## C. *Exemption 5*

■ 5 U.S.C. § 552(b)(5) exempts from disclosure to the public all inter-agency or intra-agency memoranda or letters which a private party could not discover in litigation with the agency. In *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), the Supreme Court defined the scope of Exemption 5 as encompassing both statutory privileges as well as the government's common law privilege from discovery in litigation. *Id.* at 799, 104 S.Ct. at 1492–93. The three most frequently cited privileges incorporated into Exemption 5 are the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504,

1515–16, 44 L.Ed.2d 29 (1975). Of the sixty-three documents in dispute, defendants invoke the deliberative process privilege for fifty-seven documents, the attorney work product privilege for twenty-one documents, and the attorney-client privilege for thirty-two documents.[2] Defs.' Mot. for Summ.J., *Vaughn* index. While the deliberative process privilege serves as the sole rationale for exempting thirteen documents, the attorney work product privilege serves as the single rationale in only two documents, and the attorney-client privilege is claimed as the sole basis for withholding in only one document. *Id.*

### 1. The Deliberative Process Privilege

■ The purpose of the deliberative process component of Exemption 5 is to encourage the free and candid expression of ideas, advice, recommendation and opinions in the deliberative or policymaking processes. *Mead Data Cent.*, 566 F.2d at 256; *accord National Sec. Archive v. FBI*, 759 F.Supp. 872, 879 (D.D.C.1991). To prevail under this privilege, the agency must demonstrate that the requested document is "predecisional," generated before the adoption of an agency policy, *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978) (*en banc*), and that the communication is "deliberative," *i.e.*, a direct part of the deliberative process in that it expresses opinions or provides recommendations on legal and policy matters. *Vaughn v. Rosen*, 523 F.2d at 1136, 1143–44 (D.C.Cir.1975). The burden is upon the agency to show that the information in question satisfies both requirements. *See, e.g., Wolfe v. HHS*, 839 F.2d 768, 774 (D.C.Cir.1988) (*en banc*); *Southam News v. INS*, No. 85–2721, slip op. at 16–17 (D.D.C. May 18, 1989).

In this case, defendants' *Vaughn* index, which provides a detailed inventory itemizing, indexing, and justifying defendants' withholdings, demonstrates that the fifty-seven withheld documents claimed under the deliberative process privilege are all drafts, recommendations, point papers, or subjective memos written to formulate future agency policies, and therefore, are predecisional.

■ Plaintiff contends, however, that since these documents are not connected to a specific agency policy, they are not predecisional. The Court disagrees. An agency attempting to prove the predecisional character of requested documents does not have to point specifically to an agency final decision. *Sears, Roebuck & Co.*, 421 U.S. at 153 n. 18, 95 S.Ct. at 1517–18 n. 18. Instead, the agency merely has to establish that the information was part of the deliberative process. *See Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C.Cir.1991) (rejecting the "pinpointing" language of *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 585 (D.C.Cir.1987), and *Paisley v. CIA*, 712 F.2d 686, 698 (D.C.Cir.1983)); *accord Judicial Watch v. Clinton*, 880 F.Supp. 1, 13 (D.D.C.1995), *aff'd*, 76 F.3d 1232 (D.C.Cir.1996). In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n. 18, 95 S.Ct. 1504, 1517–18 n. 18, the Supreme Court further explained that "agencies are ... engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and lower courts should be wary of interfering with this process." Since these documents are clearly part of the agency's "process" in arriving at final policies, they are deemed predecisional. In addition, since all of these documents flow from a subordinate to a superior official or contain a subordinate's advice to a superior, the documents are viewed as recommendations and advice with no precedential significance.[3] *See Coastal States Gas Corp. v.*

---

**2.** Although the *Vaughn* index lists sixty-five documents, two documents, Nos. 62 and 63, were released to plaintiff in their entirety, along with the cover sheet of document 25, when defendants abandoned their claim that Exemption 2 allowed withholding of those documents. Consequently, the parties' dispute centers on the status of the sixty-three remaining documents still withheld from plaintiff.

**3.** Among the relevant fifty-seven documents, Document 37 is the only exception to this subordinate-to-superior flow. Although this document is an order from the Commandant of the Marine Corps to a subordinate, it contains a briefing for an aide's meeting with the Commandant over a future USMC decision, and therefore, is deemed predecisional.

*Dep't of Energy,* 617 F.2d 854, 868 (D.C.Cir. 1980).

After concluding that the documents are predecisional, the Court must determine whether the material is "deliberative." *National Sec. Archive,* 759 F.Supp. at 880. The documents withheld under the deliberative process privilege all reflect "agency give-and-take," the disclosure of which is "likely in the future to stifle honest and frank communications within the agency." *Coastal States,* 617 F.2d at 866, 868. For instance, since Document Nos. 6, 8–10, 22–25, 27–29, 33, 40, 42, 45 and 56, and 58–60 are all drafts, the release of any part of them would reveal the process by which the drafts evolved into final documents, and thereby expose the deliberative process to the damage the privilege seeks to prevent. *See Mobil Oil Corp. v. EPA,* 879 F.2d 698, 703 (9th Cir.1989). In addition, Document Nos. 1–5, 7, 14–18, 20, 32, 34–39, 44, and 46–54 are memos from either subordinates or legal counsel recommending courses of action or providing civilian and legal advice to their superiors or clients, and therefore are deliberative. Finally, Document Nos. 12, 13, 21, 26, 30, 41, 43, 61, and 64 contain factual information that is nonsegregable from the deliberative material itself, since the facts themselves reflect the agency's deliberative process. *See Wolfe v. HHS,* 839 F.2d at 774. Since "factual information may be withheld whenever disclosure would 'so expose the deliberative process,'" *National Sec. Archive,* 759 F.Supp. at 881, the Court finds that these documents are also exempt under Exemption 5.

Plaintiff contends, as an alternative to full disclosure, that these documents should be released with the authors' names redacted. The Court disagrees. Releasing these materials in redacted form would still disclose the agency's decisionmaking process to the public; the Court therefore does not order the disclosure of these documents in redacted form.

Citing *Hoch v. CIA,* 593 F.Supp. 675, 689 (D.D.C.1984), plaintiff contends that some blind, unsigned, and illegible memoranda must be released, specifically citing Document Nos. 3, 22, 31, and 33. Pl.'s Opp'n at 13. However, the *Hoch* court released an anonymous document because it lacked any evidence that "disclosure of the document would defeat rather than further the purposes of FOIA." *Id.* at 688–89. In this case, in contrast, defendants' *Vaughn* index provides sufficient proof that the four documents mentioned by plaintiff all fall within the claimed exemptions, and therefore, disclosure of these documents "would defeat ... the purposes of FOIA." *Id.* For instance, since three of the four documents in question are either drafts (Documents 22 and 33) or memos written to analyze proposed orders (Document 3), they fall squarely within the deliberative process component of Exemption 5. Moreover, the last document, No. 31, satisfies the prerequisites of Exemption 6, *see infra* at 53–54, and also has been properly withheld by the Marine Corps.

Plaintiff further alleges that Document Nos. 48 and 50, which are described as "point papers," should be disclosed since a "similar" briefing book was released in *National Sec. Archive,* 759 F.Supp. 872. However, the reasoning in *National Security Archive* fails to support plaintiff's position. In that case, the agency used a briefing book to update an official on the agency's established programs, whereas in this case, the Marine Corps prepared the point papers in the midst of its deliberative process to assist officers in their formulation of a final decision. The Court finds that the point papers are deliberative material, and therefore, the Court holds that they were properly withheld by defendants under Exemption 5.

### 2. *Attorney Work Product Privilege*

■ The second privilege incorporated into Exemption 5 is the attorney work product privilege, which protects documents prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy. *Sears, Roebuck & Co.,* 421 U.S. at 154, 95 S.Ct. at 1518. This privilege has been interpreted broadly; "it extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller v. NLRB,* 964 F.2d 1205, 1208 (D.C.Cir.1992) (citing *Delaney, Migdail &*

*Young, Chartered v. IRS,* 826 F.2d 124, 127 (D.C.Cir.1987)).

■ In this case, the documents withheld under the work product privilege, Document Nos. 11, 16–18, 20, 32, 37, 38, 40–42, 44–47, 49, 51, 53–55, and 61, were all created by agency attorneys and relate to matters in which HQMC anticipated litigation.[4] *See* Defs.' Mot. for Summ.J., *Vaughn* index. Document Nos. 11, 16–18, and 20 were written by the Judge Advocate Division of HQMC to examine potential violations of law raised by North's involvement in the Iran–Contra proceedings, including the possibility that North might be found in contempt of court. Document Nos. 32, 37, 38, 40–42, 44–47, 49, 51, 53–55, and 61 were written by agency attorneys in anticipation of litigation over North's entitlement to retired pay if he were convicted of a federal offense. Since these memoranda outlined the legal theories and strategies of agency attorneys in their preparation for likely future litigation, they fall within the attorney work product privilege and are properly withheld under Exemption 5.

### 3. *Attorney–Client Privilege*

■ The third privilege incorporated into Exemption 5 protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc.,* 566 F.2d at 252. While this privilege usually applies to facts divulged by a client to his attorney, it also encompasses any opinions given by an attorney to his client based upon those facts, *Schlefer v. United States,* 702 F.2d 233, 245 (D.C.Cir. 1983), as well as communications between attorneys which reflect client-supplied information. *See, e.g., Green v. IRS,* 556 F.Supp. 79, 85 (N.D.Ind.1982), *aff'd,* 734 F.2d 18 (7th Cir.1984). To prevail under this privilege, the agency must establish that the disputed communications were confidential and have

remained protected from general disclosure. *Coastal States,* 617 F.2d at 863.

■ Plaintiff contends that defendants' *Vaughn* index fails to demonstrate that the withheld documents contain confidential information. The Court disagrees. This circuit has held that confidentiality may be inferred when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States,* 617 F.2d at 863. In this case, the *Vaughn* index adequately shows that the documents withheld under the attorney-client privilege contain either: (1) clients' opinions revealed to their lawyers in the course of seeking legal advice; or (2) agency attorneys' legal responses to requests from their clients.[5] As such, the documents reflect a relationship analogous to that of a private party and its attorney, and therefore, the Court infers confidentiality at the time of the communications. In addition, since the *Vaughn* index shows that the documents withheld under Exemption 5 have been circulated only to agency officials who were involved in the decisionmaking process, the agency has satisfied its burden of maintaining confidentiality. *Mead Data Cent.,* 566 F.2d at 253 n. 24 (noting that the privilege extends to those communications between attorneys and all agents who are authorized to speak for the organization on the subject matter of the communication). The documents fall squarely within the attorney-client privilege and therefore are exempt from disclosure under Exemption 5.

### D. *Exemption 6*

Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" where the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1994). Defendants have invoked Exemption 6 to withhold four documents,

---

4. Document Nos. 11 and 55 were withheld solely under the attorney work product privilege component of Exemption 5.

5. Defendants claim the attorney-client privilege to withhold thirty-two documents, Nos. 7–10, 12–14, 21, 24–30, 34, 35, 37, 39, 45–51, 53, and 56–60. However, only one document, No. 57, is withheld solely under this privilege.

Nos. 15, 19, 31, and 65, as well as North's medical records. The first three documents involve North's possible assignment to government quarters, his availability for duty and time away from duty, his tasks at the Service Plans and Records Branch, and his retirement pay account. The fourth document is North's Field Service Record Book, which includes his qualifications, assignments, education, training, administrative comments, security clearances, and his deployment record. In addition, plaintiff seeks disclosure of North's medical records, which were withheld from her by HQMC and NNMC–Bethesda. Plaintiff contends that defendants cannot invoke Exemption 6 with respect to these records because defendants have failed to demonstrate that the invasion of North's personal privacy outweighs the public interest in disclosure.

To warrant protection under Exemption 6, information must first meet a threshold requirement: it must fall within the category of "personnel and medical files and similar files." 5 U.S.C. § 552(b)(6). The Court finds that Document 65 (North's Field Service Record Book) and his medical records clearly satisfy this initial test as "personnel and medical files." The Court also finds that the remaining three documents qualify as "similar files.". In *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 600–02, 102 S.Ct. 1957, 1960–62, 72 L.Ed.2d 358 (1982), the Supreme Court held that "similar files" was to have a broad, rather than a narrow meaning. The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." Rather, the Court explained that all information which "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. *See also New York Times Co. v. NASA*, 920 F.2d 1002 (D.C.Cir.1990) (*en banc*) (employing the Supreme Court's "similar files" analysis in a different context). Since all the documents withheld under this privilege specifically relate to North, these three documents are "similar files" within the meaning of Exemption 6.

After determining whether the information meets the threshold requirement of Exemption 6, the Court must consider whether disclosure of the records would constitute a clearly unwarranted invasion of personal privacy. *See Department of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). This involves a balancing of the public's right to disclosure against the individual's right to privacy. *Rose*, 425 U.S. at 372, 96 S.Ct. at 1604. While the right to privacy has been interpreted broadly as any "threat[ ] to privacy interests more palpable than mere possibilities," *id.* at 381 n. 19, 96 S.Ct. at 1608 n. 19, the scope of the public interest to be considered has been narrowed to the "core purpose of the FOIA:" to "shed[ ] light on the agency's performance of its statutory duties." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989).

Since these records all reveal significant personal data about North, there can be no reasonable dispute that North has a privacy interest in maintaining their confidentiality. *See Hoch v. CIA*, 593 F.Supp. at 690. Consequently, North's privacy interest must be weighed against the public's interest in disclosure to determine if the invasion of his privacy is unwarranted. Although the Court recognizes that "the presumption in favor of disclosure is as strong [under Exemption 6] as can be found anywhere in the Act," the Court finds that there is no legitimate public interest which outweighs North's substantial privacy interest. Plaintiff argues that the public has a significant interest in "a political candidate's character or fitness to hold office," Pl.'s Decl., ¶ 1, and that the public interest in disclosure of these documents therefore outweighs North's privacy interest. While the public may indeed have an interest in a particular candidate's fitness to hold office, plaintiff is incorrect that such an interest can serve as the sole justification for releasing a candidate's medical files under the FOIA. Since releasing North's medical records would not "shed any light on the conduct" of the Marine Corps, *see Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. at 1481–82, the Court concludes that there is no public interest in disclosure of North's private files,

and therefore that the documents were properly withheld under Exemption 6.

### III. *CONCLUSION*

For the reasons stated, the Court grants defendants' motion for summary judgment and denies plaintiff's cross-motion for summary judgment and motion for a further search. An appropriate Order accompanies this Opinion.

### *ORDER*

In accordance with the accompanying Opinion, it hereby is

ORDERED, that defendants' motion for summary judgment is granted. It hereby further is

ORDERED, that plaintiff's cross-motion for summary judgment is denied. It hereby further is

ORDERED, that plaintiff's motion for a further search is denied.

SO ORDERED.