James M. **KLUNZINGER**, Plaintiff,

v.

**INTERNAL REVENUE SERVICE,**
Defendant.

No. 5:96–CV–209.

United States District Court,
W.D. Michigan,
Southern Division.

March 3, 1998.

Frederick M. Baker, Jr., Alan M. Valade, Honigman, Miller, Schwartz & Cohn, Lansing, MI, for plaintiff.

Margaret A. Smith, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, Charles H. Keen, Trial Attorney, U.S. Department of Justice, Tax Division, Internal Revenue Service, for defendant.

## OPINION AND ORDER ON PENDING MOTIONS

MILES, Senior District Judge.

Plaintiff James M. Klunzinger filed this action against defendant the Internal Revenue Service ("IRS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Currently before the court are plaintiff's Mo-

tion for Summary Judgment (docket no. 11); plaintiff's Motion to Require IRS to Provide a Vaughn Index (docket no. 12); the IRS's Motion for Summary Judgment (docket no. 16); and plaintiff's Countermotion for Partial Summary Judgment Requesting a Ruling that the IRS Has Not Conducted a Reasonable Search for Responsive Documents and Requiring It to Do So (docket no. 18).

For the following reasons, the court denies plaintiff's motions in their entirety, and grants the IRS's motion for summary judgment. The court also orders supplemental briefing on the issue of plaintiff's request for attorneys' fees.

### FACTS

On July 19, 1996, plaintiff filed a FOIA request with the IRS requesting that it provide him with records relating to the "three-year deferral election" authorized by § 13201(d)(4) of the Omnibus Budget Reconciliation Act of 1993 ("the 1993 Act"), Pub.L. No. 103–66, 107 Stat. 312, 459–60.[1] Plaintiff's FOIA request also sought records relating to I.R.S. Notice 93–51, subsequently issued by the IRS. More specifically, plaintiff's written request sought seven categories of information as follows:

*REQUEST 1:* Any and all documents relating to the drafting, formulation, enactment, operation, enforcement and/or interpretation of the three-year deferral election contained in the [1993 Act].

*REQUEST 2:* Any and all documents relating to the drafting, formulation, enactment, publication, operation, implementation, enforcement and/or interpretation of Notice 93–51.

*REQUEST 3:* Any and all documents relating to the correspondence and/or communication(s) between you and the American Institute of Certified Public Accountants ("AICPA") concerning the three-year deferral election, including, but not limited to, the communication regarding the January 31, 1995 meeting of the AICPA's Tax Practice and Procedures Committee and the March 9, 1995 letter of Deborah Walk-

---

1. Sections 13201 and 13202 of the Omnibus Budget Reconciliation Act of 1993 imposed tax rate increases which operated retroactively.

Section 13201(d) allowed taxpayers to elect to pay the additional 1993 taxes in three equal installments.

er, Chair, Tax Executive Committee, to Mr. J. Paul Whitehead, III, and Ms. Jody J. Brewster, of the Internal Revenue Service. A copy of the March 9, 1995 letter is attached hereto as Exhibit A.

*REQUEST 4:* Any and all documents relating to the correspondence and/or communications between you and the AICPA concerning Notice 93–51.

*REQUEST 5:* Any and all documents relating to the drafting, formulation, preparation, publication, operation, enforcement, interpretation and/or implementation of any procedure, policy, and/or position intended by you to prevent, avoid or otherwise minimize erroneous, misleading, inaccurate and/or ambiguous notices, announcements, forms, publications and/or other communications from being prepared, mailed, issued, communicated and/or otherwise delivered by you to taxpayers or other persons who made (and/or who purportedly made) the three-year deferral election under [the 1993 Act].

*REQUEST 6:* Any and all documents relating to the formulation, composition, and/or contents of any and all *standardized* responses to and/or communications with taxpayers, their attorneys, accountants and/or their enrolled agents that were prepared, sent, mailed, issued, communicated and/or otherwise delivered by you to taxpayers or other persons regarding timely, untimely, valid, and/or invalid three-year deferral elections made (or purportedly made) by taxpayers or other persons under [the 1993 Act], but *not* including documents that bear the actual named, addresses, social security numbers and other taxpayer-unique information about the individual taxpayers to whom such standardized responses or communications were sent, mailed, issued, communicated and/or otherwise delivered by you.

*REQUEST 7:* Any and all documents reflecting or indicating the number of taxpayers and/or other persons to whom you sent, mailed, communicated and/or otherwise delivered each of the standardized responses and/or communications requested in No. 6, above.

Complaint, Exhibit A. The IRS responded in writing by asking plaintiff to agree to an extension of time in which to respond to plaintiff's FOIA request. After the IRS failed to provide any of the requested documents, and plaintiff had exhausted his administrative appeals, he filed this action on December 20, 1996.

On January 9, 1997, approximately three weeks after plaintiff filed his complaint, the IRS provided plaintiff with a number of what plaintiff describes as "non-substantive" documents (consisting of 23 pages). In an accompanying letter to plaintiff which it described as being "in final response to [his] request," the IRS indicated that some records were being withheld because they "are drafts, are predecisional and deliverative [sic] in nature or represent attorney work product" pursuant to 5 U.S.C. § 552(b)(5). Days later, plaintiff received another letter from a different IRS official, informing him that "[t]he office to which your request has been assigned is experiencing a substantial backlog of FOIA requests" and that plaintiff's request would be answered "as soon as possible."

Once again, days later, yet another IRS officer provided a "further response" to plaintiff's FOIA request, this time providing six pages of documents, which plaintiff deems "non-substantive." The cover letter provided with the documents also indicated that the IRS was withholding three different documents, consisting of a total of 12 pages, based on the exemption contained in 5 U.S.C. § 552(b)(5). The letter identified all three of the withheld documents as drafts of Notice 93–51.

On March 17, 1997, Charles Keen, a trial attorney with the Department of Justice's Tax Division, had a telephone conversation with plaintiff's counsel during which he informed plaintiff's counsel that he would forward 2,210 additional pages of responsive documents as soon as the IRS had reviewed and copied them. Approximately two months later, in May, 1997, Keen again spoke with plaintiff's counsel, assuring that the promised documents were "on the way." Finally, on June 12, 1997, plaintiff's counsel received another 1,660 documents responsive

to the FOIA request, together with a letter from Keen stating, *inter alia*, that "further documents are forthcoming." Of the 1,660 pages provided, the IRS had redacted information from 76 pages.

On June 27, 1997, three days before the court-ordered deadline for filing dispositive motions in this case, plaintiff's counsel received an additional 523 documents from Keen, together with yet another cover letter promising that "further documents are forthcoming."[2] Of the 523 pages provided, the IRS had redacted information from 67 pages.

On June 30, 1997, plaintiff filed his Motion for Summary Judgment, requesting that "the IRS be required to immediately produce all remaining documents responsive to [his] FOIA request, and to pay [plaintiff] his reasonable attorneys' fees" incurred in prosecuting this action. Plaintiff did not, in his motion, expressly contest the reasonableness of the IRS's search for responsive documents. However, accompanying plaintiff's summary judgment motion was a motion asking that the IRS be required to provide a Vaughn index[3] "to meet its burden of proof to establish the applicability of the 'deliberative process' exemption" to documents which the IRS had withheld or redacted. The IRS ostensibly responded to both of plaintiff's motions by filing its own motion for summary judgment, in which it argued (1) that it has conducted an adequate search for documents responsive to plaintiff's FOIA request, and (2) that any documents and portions of documents not produced to plaintiff were properly withheld pursuant to three different FOIA exemptions, 5 U.S.C. § 552(b)(3), (5), and (7)(E).

After the IRS filed its motion for summary judgment, plaintiff filed a response in which he acknowledged receiving 827 pages of documents from Keen on various dates since plaintiff had filed his own motions. Of those 827 pages, the IRS had redacted information from 110 pages. This brought the total number of pages of documents provided to 3,039,[4] with 253 of those pages containing redactions. The same day on which he filed his response to the IRS's motion, plaintiff also filed his third motion, styled a "Countermotion for Partial Summary Judgment," in which he argued, for the first time, that the IRS had not conducted a reasonable search. He has requested, in this motion, that the court require the IRS "to conduct a reasonable and systematic search within the agency for documents responsive to [his] FOIA request[.]"

## ANALYSIS

The FOIA provides that federal agencies

upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3). In enacting this statute, "Congress sought to open agency action to the light of public scrutiny." *Vaughn v. United States*, 936 F.2d 862, 865 (6th Cir. 1991) (citations and internal quotation marks omitted).[5] "This basic purpose reflected a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.*

**2.** On the day Keen sent these documents, he had a conversation with plaintiff's counsel during which he stated that the IRS had "not quite" completed its review of 250 potentially responsive documents which it had compiled in response to plaintiff's request. Keen also told plaintiff's counsel that the Department of Justice "Disclosure" office had "just found" additional documents, located at another field office, which it had not yet reviewed. Keen promised that the IRS would complete its response to plaintiff's FOIA request within 30 days of the court-ordered deadline for filing dispositive motions (June 30, 1997); in other words, by July 30, 1997.

**3.** The term "Vaughn index" is derived from the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**4.** Plaintiff calculates that the IRS has provided a total of 2,293 pages of documents. However, the court's own calculations based on plaintiff's own factual submissions or concessions result in a total of 3,039 pages.

**5.** The plaintiffs in *Vaughn v. United States*, a 1991 Sixth Circuit case, had no relationship to the District of Columbia Circuit's 1973 decision in *Vaughn v. Rosen*, cited in footnote 3 above.

The FOIA does contain a number of listed exemptions. Although these exemptions must be narrowly construed, "they are intended to have meaningful reach and application." *Id.* at 865–66 (citations and internal quotation marks omitted). "In reviewing an agency's nondisclosure determination in any particular case, a court must have access to sufficient data concerning any potentially exempt documents to determine whether the disclosure restrictions apply." *Osborn v. Internal Revenue Service*, 754 F.2d 195, 196 (6th Cir.1985). Any claims made by an agency that documents are exempt from disclosure must be supported by a summary of those documents, known as a Vaughn index, which must meet the following criteria:

1. The index should be contained in one document, complete in itself.

2. The index must adequately describe each withheld document or deletion from a released document.

3. The index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant. Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA.

*Id.* (citations omitted). "Examination of a Vaughn Index allows the court to decide whether the government's refusal to divulge information is justified without having the potentially secret nature of the information compromised." *Id.*

At the outset, the court notes that it remains unaware of the purpose of plaintiff's FOIA request—a legally irrelevant fact, but one which is highlighted by plaintiff's decision to characterize at least some of the requested documents which the IRS has provided as "non-substantive." [6] The court also has no knowledge regarding whether the IRS is aware of the reason for plaintiff's request—but again, this really has no relevance in this proceeding. However, what is clear, based on the declarations of nine government employees which the IRS has submitted in support of its motion, is that a substantial amount of government time and resources have to date been devoted to providing plaintiff those documents which literally fall within the terms of his FOIA request. This expenditure of resources and the statute's underlying philosophy of full disclosure cannot be ignored.[7] What the court must do at this juncture is determine whether the agency's search has been adequate, and whether the agency has met its burden of showing that those records (or portions thereof) which have been withheld fall within the statutory exemptions claimed.

6. Plaintiff has used the term "non-substantive" to refer to documents including "cover memoranda, pages from tax forms, pages available on publicly available electronic databases and tax services, journal entries providing only dates, time, and telephone numbers relevant to unspecified events, and fax cover sheets." Brief in Support of [Plaintiff's] Motion to Require IRS to Provide a Vaughn Index, at 2, n.1. Because these documents are clearly responsive to the express terms of his seven-part FOIA request, plaintiff apparently means to suggest that these "non-substantive" documents do not satisfy him in the sense that they do not contain the information which he hoped to obtain—whatever that is.

7. A First Circuit panel ably summarized the burdens and duties imposed by FOIA as follows:
 What usually remains unspoken, but is a reality often affecting attitudes and conduct implementing FOIA, is the very considerable burden laid on both the government and the trial court in searching files for multitudinous documents, analyzing them, and justifying not only any exclusion relied upon but any refusal to redact and segregate the disclosable from the residually privileged. This burden is often exacerbated by the apparent lack of any perceptible public purpose on the part of the requester. In such a case, already burdened courts and agencies may deem FOIA's dedication to the importance of 'sunlight' as unrealistic. We thoroughly appreciate this kind of tension. We are dealing with a law that complicates the task of governing. Yet its goals are worthy, and we are bound to honor both its letter and spirit. Moreover, as in any 'hard case,' we must constantly remind ourselves that our decision establishes principles that must be generally applicable—both to requests that seem merely annoying and to those that may reflect the most vital concerns of citizens.
 *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 229 (1st Cir.1994).

*Adequacy of the search*

■ In order to satisfy its burden of establishing that it is entitled to summary judgment because it has fully discharged its obligations under FOIA, the agency must demonstrate that it has "thoroughly searched for the requested documents where they might reasonably be found." *Miller v. United States Dep't of State,* 779 F.2d 1378, 1383 (8th Cir.1985). The court must apply the following standard in evaluating the adequacy of the agency's search:

> The adequacy of the agency's search for requested documents is judged by a standard of reasonableness, i.e., 'the agency must show beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents.' ... But the search need only be reasonable; it does not have to be exhaustive.... An agency must prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith....
>
> ... [T]he standard of reasonableness which we apply to agency search procedures does not require absolute exhaustion of the files; instead, it requires a search reasonably calculated to uncover the sought materials....

*Id.* at 1383, 1384–85 (citations omitted).

■ The evidence presented indicates that plaintiff directed his FOIA request to the IRS's Office of Disclosure. In February, 1997, after plaintiff had filed this action, Amy Pfalzgraf, an attorney in the IRS's Office of Assistant Chief Counsel (Disclosure Litigation) reviewed plaintiff's FOIA request file and determined that the search which had been conducted by the Office of Disclosure was not complete. According to Pfalzgraf's declaration, she "then set out to contact functions in the National Office of the [IRS] and the Office of Chief Counsel that may have documents responsive to [plaintiff's] FOIA request." Pfalzgraf's lengthy declaration then details a methodical search of offices of the IRS which she believed may have documents. It also details the results of her search. The IRS has additionally provided

several other detailed declarations of those who participated in the search.

Plaintiff argues that the IRS's search was not reasonable because the agency's declarations "reflect a haphazard, rather than a methodical, search." Brief in Support of Countermotion for Partial Summary Judgment at 8. Plaintiff further argues that because the IRS does not *specifically* state that all files likely to contain responsive materials were searched, he cannot be certain that Pfalzgraf did not overlook persons holding responsive documents. Plaintiff also argues that the documents themselves suggest that other documents exist which have not been provided. Finally, plaintiff argues that because approximately 3,000 documents were discovered after the IRS sent its initial "final response" to his request, the adequacy of the search which has been done to date should be doubted and the court should issue an order requiring the IRS to conduct a "systematic" search.

Plaintiff is incorrect in arguing that the agency's declarations indicate a "haphazard" search. Rather, paragraphs 8 through 18 of Ms. Pfalzgraf's declaration detail a methodical search of offices of the IRS which might have had documents responsive to plaintiff's request. Given the thoroughness of the search, plaintiff's suggestion that Pfalzgraf might "quite possibly" have missed other "other persons holding responsive documents" amounts to " 'mere speculation that as yet uncovered documents may exist [and] does not undermine the finding that the agency conducted a reasonable search.' " *Steinberg v. United States Dep't of Justice,* 23 F.3d 548, 552 (D.C.Cir.1994) (quoting *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir.1991)).

Plaintiff also argues that the documents which the IRS produced or described in its Declarations "cannot possibly be all of the responsive documents in the IRS's possession." Plaintiff points to a handful of "discrepancies" which he argues suggest the existence of additional pages or documents for which no claim of exemption has been substantiated. In the paragraphs to follow, the court will address each of these "discrepancies" identified by the plaintiff.

■ Plaintiff contends that the IRS has claimed that the deliberative process exemption applies to a document (bates-stamped pages 3359–3362) which the IRS has described as a "Preliminary draft of a Memorandum to Reviewers addressing the question, raising during a February 22, 1994 meeting with Commissioner functions, whether the [IRS] must respect a taxpayer's designation of overpayments for tax years 1994 and 1995 as installment payments of additional 1993 taxes when taxpayer has prior outstanding tax liabilities[.]" Declaration of Gita Khadiri,[8] at pp. 7–8, ¶ 7(B)(xv). Plaintiff further contends that the IRS did not provide him with a final version of this memo. However, because the memo itself—assuming that it exists—would clearly be part of the deliberative process leading up to the publication of Revenue Procedure 94–58, which was not published until September 18, 1994, the memo would be as exempt from disclosure as any of its preliminary drafts. *See Hunt v. United States Marine Corps,* 935 F.Supp. 46, 51 (D.D.C.1996) (deliberative process privilege applies to "drafts, recommendations, point papers, or subjective memos written to formulate future agency policies").

Plaintiff also finds "discrepancies" in instances where the IRS's declarations refer to multiple copies of a March 11, 1994 memo from IRS Legislative Affairs Officer Joel Miller to the participants of the February 22, 1994 meeting. *See* Pfalzgraf Decl. at p.16, 30, ¶ s 19(A)(vi) and 23(C)(v). Plaintiff argues that some copies of the memo are three pages in length, while elsewhere they appear to consist of only one page. Plaintiff further argues that although Ms. Pfalzgraf's declaration refers to one copy of this memo (bates-stamped pages 1426–1428) as being withheld, referencing Gita Khadiri's declaration at ¶ 7(B)(xii)(p.7), but that paragraph of Khadiri's declaration does not mention the document. Having reviewed the relevant portions of the declarations in detail, the court cannot agree. Paragraph 19(A)(vi) of the

Pfalzgraf Declaration states that bates-stamped pages 3345–3347 are identical to bates-stamped pages 111–113 and 194–196, which are copies of the March 11, 1994 memo. Paragraph 23(C)(v) of this same declaration then states that

> (v) Bate-stamped [sic] pages 1347, 1383, and 1392 are one copy and bate-stamped [sic] pages 1426–1428 are a second copy of a March 11, 1994, memorandum from Joel Miller to participants of a February 22, 1994, meeting, with attachments. Bate-stamped [sic] pages 1347, 1383, 1392, and 1426–1428 are identical to bate-stamped [sic] pages 3345–3347, described in Khadiri declaration at ¶ 7(b)(xii).

Thus, if one reads closely, the IRS is indicating that pages 1426–1428 are identical to pages 3345–3347. The Khadiri declaration then states in ¶ 7(B)(xii) that the memo, which is "part of the background file for Rev. Proc. 94–58 and record[s] the steps in the give-and-take of the deliberative process leading up to the publication of the Revenue Procedure[,]" *id.,* ¶ 7(B), may be described as a

> (xii) Memorandum dated March 11, 1994, from Joel Miller, Legislative Affairs Division, to participants of a February 22, 1994, meeting clarifying a February 28, 1994, memorandum which summarized, among other things, a discussion during the meeting concerning possible revisions to the 1994 and 1995 Forms 1040 to accommodate taxpayers who made the three-year deferral election, with explanatory attachments (bate-stamped [sic] pages 3345–3347).

Thus, the IRS has clearly accounted for the pages which plaintiff seems to believe are missing. The IRS has also provided a detailed explanation substantiating its claim that the pages are exempt from disclosure as part of the deliberative process.

Plaintiff also argues that Table 1 of Pfalzgraf's declaration refers to documents (numbered 74–77, 84, 87–90, 97, 100–103, 110, 141–

---

8. Gita Khadiri is an attorney-advisor employed by the IRS's Office of Assistant Chief Counsel (Income Tax & Accounting). In February, 1994, she was assigned to draft what became Revenue Procedure 94–58, which provides guidance to

taxpayers liable for additional 1993 federal income taxes solely by reason of the rate increases established in the 1993 Act. Khadiri Decl., at p.1, ¶ s 1–2.

144, 151, and 282) as having been withheld pursuant to the deliberative process privilege, and further references Khadiri's declaration, ¶ 7(B)(vii), for a factual description which explains the applicability of the privilege. Plaintiff contends that this paragraph of Khadiri's Declaration does not in fact mention those document numbers. However, Table 1 of Pfalzgraf's declaration itself identifies the documents as "Memorandum of tentative strategies, plus attachment." In addition, paragraph 19(A)(iv) of this same declaration explains that

> (iv) Bate-stamped [sic] pages 74–77, 87–90, 100–103, and 1441–144 are copies of a memorandum written by the Legislative Affairs Division titled 'IRS's Proposed Implementation of Installment of Additional 1993 Taxes Due in 1995.' Bate-stamped [sic] pages 74–77, 87–90, and 100–103 are identical to one another and are identical to bate-stamped [sic] pages 3057–3060, described in Khadiri declaration at ¶ 7(B)(vii). Bate-stamped [sic] pages 141–144 are a different draft of the same memorandum with minor modifications. Bate-stamped [sic] pages 84, 97, 110, and 151 are all enlarged, draft copies of part of page 2 of a 1993 Form 1040 with certain handwritten entries and textual material added. Pages 84, 97, 110, and 151 are identical to one another and are identical to bate-stamped [sic] page 3061, described in the Khadiri declaration at ¶ 7(B)(vii). These pages were all examples of how to complete Form 1040 in conformity with the instructions contained in the 'IRS's Proposed Implementation of Installment of Additional 1993 Taxes Due in 1995' and were an attachment to that document. Bate-stamped page 282[sic] is a full-sized copy of page 2 of Form 1040 with the same handwritten entries and textual material.

In addition, as promised, ¶ 7(B)(vii) identifies pages 3057–3060 and 3061 respectively as a "Memorandum prepared by the Legislative Affairs Division outlining a tentative strategy for collecting the second and third installments of additional 1993 taxes from taxpayers who elected to defer those payments pursuant to [the 1993 Act] . . ., plus attached draft copy of Form 1040[.]" When read together, the declarations both account and

provide a sufficiently detailed explanation for all of the document page numbers which plaintiff contends have been withheld from disclosure.

■ Finally, plaintiff argues that the adequacy of the IRS's search must be questioned, and another search should be required, because the vast majority of the documents ultimately discovered were not located until after the agency had already provided its "final response" to plaintiff's FOIA request. Even the IRS acknowledges that its initial search was incomplete, however, and the record clearly shows that it has already undertaken a more thorough search which revealed the existence of a much larger number of documents. That the IRS continued to discover documents— and release them to plaintiff—over a period of time after it renewed its search does reflect the slowness of the search. However, the continued release of responsive documents also attests to the agency's good faith in attempting to provide a complete response. Under the circumstances, the court concludes that no additional search should be required.

*Sufficiency of the IRS Declarations to Satisfy the Vaughn standard*

■ Plaintiff argues that the multiple declarations submitted by the IRS in support of its claim of exemptions are insufficient to qualify as a proper Vaughn index. To the extent that plaintiff raises arguments regarding the sufficiency of the description of the withheld documents and the explanation of the exemptions claimed, the court will address these arguments separately. Apart from these arguments, plaintiff's primary objection to the IRS's Vaughn index is that it is not, as it should be, "contained in one document complete in itself." *Osborn,* 754 F.2d at 196. However, "[i]n this circuit, no precise form is dictated for [Vaughn] affidavits; any form is acceptable which 'enables the court to make a reasoned, independent assessment of the claim[s] of exemption.' " *Jones v. Federal Bureau of Investigation,* 41 F.3d 238, 242 (6th Cir.1994) (quoting *Vaughn v. United States,* 936 F.2d 862, 866–67 (6th Cir.1991)).

Plaintiff argues that determining the basis for the IRS's claimed FOIA exemptions is "time consuming and confusing" in view of the multiple, interrelated declarations which the agency has provided. According to plaintiff,

> ... One Declaration refers to documents, in no particular order, withheld for unstated reasons, describing them as 'identical' or 'substantially identical' to other numbered documents referenced in *other* Declarations. Other Declarations then must be consulted to discern the basis for the claimed exemption as to the original document referenced in the *First* Declaration.... Following this tedious process as to the *more than 1000* withheld and redacted documents, consuming countless hours, is required to organize information from the Declarations before a consideration as to the validity of the claimed FOIA exemptions can even be begun!

Plaintiff's Response Brief at 6.[9]

██ The court agrees with plaintiff that determining the basis for the IRS's claimed exemptions is a time consuming process. However, this necessarily follows from the broad nature of plaintiff's own FOIA request. The court expresses no view on whether the process is "tedious"; in using this adjective to describe the process, plaintiff appears to be asserting his view that reviewing the claimed exemptions is tiresome or dull. Assuming that plaintiff does indeed harbor this view, once again this "tediousness" most likely follows from the nature of his request, which seeks documents very likely to be exempt because they are either predecisional and deliberative (such as "documents relating to the drafting" and "formulation" of the

three-year deferral election) or which are very likely to be redacted because they contain confidential return information (such as "communications with taxpayers" regarding three-year deferral elections). In this case, despite the absence of a Vaughn index per se, the IRS has submitted declarations that "are highly detailed, focus on the individual documents, and provide a factual base for withholding each document at issue." *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir.1993). Under the circumstances, the information which the IRS has submitted is sufficient to provide an accurate factual basis for the claimed exemptions.

*Exemptions claimed for documents withheld or redacted*

In its motion for summary judgment, the IRS argues that the documents and portions of documents which it has not released to the plaintiff have been withheld under FOIA exemptions 3, 5, and 7(E).

1. *Exemption 3*

██ Exemption 3 protects from disclosure information which is

> specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3). The basis for the IRS's exemption 3 assertion in this case is 26 U.S.C. § 6103(a), which mandates that tax returns and "return information"[10] be held

---

9. It should be noted that this 1,000 figure representing pages of withheld and redacted documents is plaintiff's calculation. The court's calculation results in a figure of 795, but does not include pages representing multiple copies of the same document.

10. 26 U.S.C. § 6103(b)(2) defines "return information" as

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments,

whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

> (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

confidential, subject to certain express exemptions. Where the IRS has redacted third-party taxpayer information which falls under § 6103, its declarations have more than justified its actions.

2. *Exemption 5*

■ Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" Courts have generally characterized this exception as encompassing the government's long-recognized "executive privilege," whose ultimate purpose is

> to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made....

*National Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–51, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). This deliberative privilege focuses on "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id.* at 150, 95 S.Ct. 1504.

The IRS argues that its declarations establish that a number of the withheld documents (or portions of documents) were prepared as a part of its deliberations and preceded its decision making regarding possible courses of action to be taken in connection with the three-year deferral election contained in the 1993 Act and Notice 93–51. *See National Wildlife Federation v. United States Forest Serv.,* 861 F.2d 1114, 1118–22 (9th Cir.1988) (draft Forest Plans and draft Environmental Impact Statements exempt from disclosure). As such, the IRS further argues, these documents are not disclosable to the plaintiff. A total of 510 pages of documents (according to the court's calculations, which do not include multiple copies of the same documents) have been withheld based on this exemption. Five documents have been redacted.

but such term does not include data in a form which cannot be associated with, or otherwise

■ Plaintiff argues that the IRS has provided only conclusory explanations regarding why this exemption applies to many of the predecisional documents. However, the court cannot agree. The explanations and descriptions which the IRS has submitted are more than sufficient to establish the predecisional and deliberative nature of the documents. The following is a nonexhaustive list of the documents which the IRS has withheld based on the deliberative privilege: Draft Notice 93–51; Draft News Release; Draft CP–01 Notice; Memorandum of tentative strategies, plus attachment; Draft Rev. Proc. 94–58; March 11, 1994 Memorandum; August 26, 1994 Memorandum; Background Information Note (BIN) (circulated with drafts of Rev. Proc. 94–58); February 28, 1994 Memorandum; Briefing paper dated September 16, 1993 (prepared by Assistant to the Commissioner for meeting of the Commissioner with the Secretary of the Treasury on alternative resolutions to problems arising from the application of the three-year deferral election to particular situations). By their very nature, these documents are exempt. Predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his or her decision are exempt from disclosure. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). So are drafts, recommendations, or point papers written to formulate future agency policies. *Hunt,* 935 F.Supp. at 51.

■ Plaintiff also argues it cannot be determined, based on the declarations submitted, whether some of the predecisional recommendations which IRS personnel made in some or all of the documents withheld pursuant to this exemption were later adopted in final, non-exempt documents, which would require disclosure of the predecisional documents. According to plaintiff,

> ... By admission, the IRS has officially adopted, in Notice 93–51, the position that a timely-filed 1993 tax return with a deferral election is required to qualify for the deferral election. It relies upon that rationale developed in documents it withheld

identify, directly or indirectly, a particular taxpayer....

from FOIA production in dealing with the public . . . . Yet Defendant has provided *no* documentation explaining the IRS's reasoning for reaching that conclusion, . . . claiming that each document containing such considerations is subject to the deliberative process exemption. Such documents inform the public about the decision making of the IRS—*precisely* the type of information that Congress, in enacting the FOIA, intended to make available to the public. . . .

Plaintiff's Response at 14. However, plaintiff misunderstands the nature of the deliberative process exemption. Certainly, "communications made after an agency decision and designed to explain it" do not fall within this exemption. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 151–52, 95 S.Ct. 1504. However, documents which fall within the exemption do not automatically lose their exempt status once the agency adopts a final position on the matter; instead, the documents become subject to disclosure only "if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion[.]" *Id.* at 161, 95 S.Ct. 1504. Simply put, "[a]n exempt document does not become disclosable because the *policy* it discusses is ultimately adopted. . . . Rather, an exempt communication becomes disclosable if the *document itself* is adopted, formally, or informally, as a statement of agency policy." *American Civil Liberties Union Fdtn. v. United States Dep't of Justice*, 833 F.Supp. 399, 405 (S.D.N.Y. 1993).

 To the extent that plaintiff seeks to discover why the IRS might have rejected any position not adopted in Notice 93–51, he is impermissibly "attempting to probe the editorial and policy judgment of the decisionmakers." *National Wildlife Federation v. U.S. Forest Serv.*, 861 F.2d at 1122. Similarly, to the extent that plaintiff seeks to discover "reasons which might have supplied, but did not supply, the basis for [the] policy which was actually adopted on a different ground[,]" he cannot be allowed to do so, for to allow otherwise would be to improperly disclose "[m]aterials that allow the public to reconstruct the predecisional judgments" of the agency. *Id.*

### 3. *Exemption 7(E)*

 The IRS has also asserted Exemption 7(E) as legal justification for withholding some of the documents which it has not disclosed to the plaintiff. (This consists of a total of 32 pages withheld, not included redacted pages.) Pursuant to Exemption 7(E), the following matters are not subject to disclosure:

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

5 U.S.C. § 552(b)(7)(E). Before an agency may invoke this provision, the agency has the burden of proving that the documents in question were compiled for law enforcement purposes. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989), *reh'g denied*, 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 966 (1990).

 Federal tax laws give the IRS a "broad mandate" to investigate persons who may be liable for taxes. *See United States v. Bisceglia*, 420 U.S. 141, 145, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). The IRS contends that the information which it has withheld based on Exemption 7 was compiled by the agency in order to determine the point at which the IRS would undertake compliance activity. According to the IRS, "[i]f this information was disclosed to the public, it reasonably could be expected to be used to circumvent the law . . . in that a person would know exactly how far he or she could go before triggering compliance activity." IRS's Memorandum in Support, at 10–12.

The court has reviewed the IRS's declarations, particularly those portions which the IRS contends establish the applicability of Exemption 7. The court concludes that no genuine issue remains regarding whether the

IRS has sufficiently established that the described documents are exempt from disclosure because they would reveal confidential information regarding when the IRS would undertake compliance activity.

*Plaintiff's request for an in camera inspection*

 Plaintiff argues that the court should review in camera "at least a sample" of the withheld documents. FOIA permits, but does not require, a district court to perform an *in camera* review of such documents. 5 U.S.C. § 552(a). Discretionary *in camera* review enables the court to determine whether an exemption is justified despite an unsatisfactory Vaughn index or inadequate supporting affidavits. *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 557 (1st Cir.1993). However, *"in camera* review is generally disfavored." *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 253 (D.C.Cir.1993). Moreover, *in camera* review is considered more appropriate where the documents withheld are brief and limited in number. *Maynard*, 986 F.2d at 558. However, where the documents in issue number in the hundred or even thousands of pages, "it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case." *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The withheld documents in this case are far too numerous to be considered the proper subject of an in camera inspection. Moreover, because the court finds the IRS's declarations to be sufficiently detailed to provide a factual basis for evaluating the claimed exemptions, the court declines to conduct an *in camera* inspection of even a sample of the documents, which is not warranted.

*Plaintiff's request for attorneys' fees*

Plaintiff's materials submitted in response to the IRS's motion for summary judgment include a prayer that the court order the IRS to "immediately pay Plaintiff his reasonable attorneys' fees and other litigation costs reasonably incurred by him in prosecuting this action." The FOIA does allow courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(B). However, plaintiff has not, in the body of his brief, explained why an award of attorneys' fees and costs is appropriate in this case. Certainly, the court has concluded that the IRS properly withheld documents which are exempt from disclosure. However, what is also apparent is that plaintiff's filing of this lawsuit caused the IRS to perform a more thorough search and to release a large number of documents which plaintiff had not previously been able to obtain. Given the record, the court is not in a position to either grant or deny plaintiff's request for fees, but will instead order the submission of additional briefing on the issue by both parties. This briefing should address not only whether plaintiff has "substantially prevailed" in this action and what attorneys' fees and costs he has incurred, but also what (if any) costs plaintiff may have incurred had the IRS provided all of the non-exempt documents before suit was filed.

## CONCLUSION

For the foregoing reasons, the court hereby grants the motion of the IRS for summary judgment and denies plaintiff's motion for summary judgment and counter-motion for partial summary judgment. The court also denies plaintiff's motion that the IRS be required to file a Vaughn index.

Should plaintiff wish to renew his request for an award of attorneys' fees and costs, he shall, by not later than 30 days after the date file-stamped on the face of this order, file and serve a written brief addressing this issue, supported by affidavits as appropriate. The IRS shall serve and file its response (if any) to plaintiff's submission by not later than 30 days thereafter.