Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

May 17, 1999.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion [553] to Compel Further Deposition Testimony from William H. Kennedy, III and for Sanctions. Upon consideration of plaintiffs' motion, defendant Executive Office of the President's (EOP) opposition, plaintiffs' reply, and defendant EOP's surreply, the court will sustain in part and overrule in part defendant EOP's objections that pertain to plaintiffs' motion. Therefore, plaintiffs' motion will be GRANTED IN PART and DENIED IN PART.

## I. Introduction

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

The dispute now before the court centers around the deposition of William H. Kennedy, III, former Associate White House Counsel to President Clinton. Kennedy was deposed on October 15, 1998, in Little Rock, Arkansas, the city where he currently resides. Plaintiffs served Kennedy with a subpoena issued from the Western District of Arkansas pursuant to FED.R.CIV.P. 45. Plaintiffs have moved under FED.R.CIV.P. 37 to compel answers to various questions that went unanswered at Kennedy's deposition.

On April 16, 1999, this court deferred ruling upon plaintiffs' motion because of the inadequate briefing on a threshold jurisdictional issue. Specifically, the court determined that supplemental briefing was required on whether and to what extent this court had the power to grant plaintiffs' requested relief under FED.R.CIV.P. 37(a). The court believes that this issue has now been properly briefed, so the court will resolve it and then address the merits of plaintiffs' motion to compel, to the extent the court has jurisdiction to do so.

## II. Analysis

### A. Jurisdiction

The jurisdictional issue before the court is whether and to what extent this court, as the court in which this action is pending, has the power to grant plaintiffs' requested relief against defendant EOP, a party, and Kennedy, a non-party deponent, in the context of Kennedy's deposition that was taken outside the range of this court's subpoena power pursuant to FED.R.CIV.P. 45. The parties are largely in agreement on this issue. In short, the parties agree that this court's power under FED.R.CIV.P. 37(a) depends upon against whom the court's relief would run. Rule 37 of the Federal Rules of Civil Procedure appears to substantiate this proposition:

(a) Motion for Order Compelling Disclosure or Discovery

. . .

(1) Appropriate Court. An application for an order to a party shall be made to the court in which the action is pending. An application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be, taken.

FED.R.CIV.P. 37(a)(1). Thus, according to the plain language of the rule, the critical issue is a determination of whom the court would be ordering were plaintiffs granted relief.

Both sides agree that this court has the power to rule upon the objections made by defendant EOP, as an order sustaining or overruling these objections would be an "order to a party." *Id.* Both sides ask the court to exercise this power. Furthermore, al-

though not specifically mentioned by defendant EOP, it would appear that the court also has the power to make an appropriate determination as to an award of attorneys' fees and expenses, as required by FED.R.CIV.P. 37(a)(4), as such relief would also be an "order to a party."

The court does not, however, have the power to rule upon relief that would run only against a non-party. FED.R.CIV.P. 37(a). Plaintiffs request, in the interest of "judicial efficiency," that this court rule upon non-party Kennedy's private counsel's objection to a question concerning whether Kennedy's counsel has corresponded with Livingstone. Of course, judicial efficiency does not create jurisdiction. No party objected to this question. Because this court can grant relief only against a party, it must deny plaintiffs' request for the court to rule upon this objection. Plaintiffs may only be granted this relief by a federal court in the Western District of Arkansas. With the parameters of this court's jurisdiction in the context of the pending motion established, the objections made by defendant EOP may now be addressed.[1]

## B. *Plaintiffs' Motion to Compel*

Defendant EOP objected to the following questions, and Kennedy refused to answer these questions based upon defendant EOP's objections:

1. What documents did Kennedy's counsel provide to Kennedy in preparation for Kennedy's deposition?

2. Whose FBI summary reports did Kennedy discuss with Vincent Foster?

3. What was the substance of conversations Kennedy had regarding Craig Livingstone's experience and job qualifications?

Rule 26(b) of the Federal Rules of Civil Procedure establishes the respective burdens of the parties with regard to motions to compel. Because plaintiffs can only obtain "discovery regarding any matter, not privi-

leged, which is relevant to the subject matter involved in the pending action" or "information reasonably calculated to lead to the discovery of admissible evidence," they must first show that the information sought to be compelled is discoverable. FED.R.CIV.P. 26(b)(1). Once this has been established, however, the burden shifts to defendant EOP to prove its claims of privilege.

### 1. *Question 1*

Defendant EOP's attorney-client privilege objection to this question will be sustained. Plaintiffs want to know what documents Kennedy's counsel provided to his client for Kennedy's review in preparation for the deposition. Plaintiffs' Motion to Compel at 13. The court has already twice ruled in very similar circumstances that plaintiffs are not entitled to know the substance of communications between the witness and his or her counsel in preparation for a deposition. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 5–8 (D.D.C. Apr. 16, 1999); *Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 52 (D.D.C. May 28, 1998) (both rejecting plaintiffs' motions to compel testimony on documents reviewed by a deponent in conjunction with preparation for deposition with attorney). Plaintiffs are not entitled to know what documents Kennedy's counsel gave to his client to review in preparation for the deposition, as this would be tantamount to inquiring into the substance of what was discussed between an attorney and client in furtherance of legal services. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 52 (D.D.C. May 28, 1998) (re: Stacey Parker). Plaintiffs are not allowed to make these types of inquiries, which could be used to piece together information about the nature of the legal advice sought by Kennedy. *See Elliott Assoc. v. Republic of Peru*, 176 F.R.D. 93, 97 (S.D.N.Y.1997); *GPA, Inc. v. Liggett Group, Inc.*, Civ. No. 94–5735, 1995 WL 33176, *1 (S.D.N.Y.1995); *In re Dayco Derivative Securities Litig.*, 102 F.R.D. 633, 636 (S.D.Ohio 1984). Therefore, defendant

---

1. Plaintiffs originally moved to compel further testimony as to various questions regarding Linda Tripp's allegations about two of her White House Counsel's Office co-workers, Betsy Pond and Deborah Gorham, but the court subsequently granted defendant EOP a protective order on this topic. Therefore, as conceded by plaintiffs in their reply, this issue is moot.

EOP's attorney-client objection will be sustained.

### 2. Question 2

■ Defendant EOP's objections to testimony on the identities of those persons whose FBI summary reports were reviewed by Kennedy and discussed with Vincent Foster will be sustained in part and overruled in part. Specifically, defendant EOP's relevance objection, to the extent any such individuals discussed were then-current Clinton Administration employees, will be sustained. However, given the subsequent relevant testimony of Linda Tripp on this subject, some basis exists to support the proposition that, contrary to Kennedy's testimony, all of the files that Kennedy may have reviewed and discussed with Foster may not have fallen into this irrelevant category of persons. Therefore, plaintiffs' question—to the extent they inquire about the identities of people discussed by Kennedy and Foster and that were not then-current Clinton Administration employees—seek relevant testimony.[2]

Plaintiffs generally asked Kennedy, without limitation to plaintiffs only, about whose FBI summary reports he discussed with Foster, who was Deputy White House Counsel until the date of his death, July 20, 1993. Plaintiffs believe that they are entitled to this information because they must find out the "chain of custody" of their FBI files to determine who could have released or used this information to their detriment.

Defendant EOP first responds on relevance grounds with several theories. First, defendant EOP argues that Foster's death in July 1993 occurred before plaintiffs' FBI files were even transferred to the White House, which did not occur until December 1993 at the earliest, according to defendant EOP's calculations. Thus, assuming those facts, Kennedy could not have had a relevant discussion with Foster. Second, defendant EOP contends that the only Republican FBI summaries that Kennedy saw were those of

persons who were either holdovers or within the appointment process. The court has already held that the FBI file information of then-current government employees is not discoverable. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 10 (D.D.C. Apr. 16, 1999) (re: Mari Anderson). Assuming these facts, defendant EOP argues that plaintiffs' inquiry would not be reasonably calculated to lead to the discovery of admissible evidence because plaintiffs' putative class would only include former Bush or Reagan Administration employees who would not need White House access.

The court agrees in part with defendant EOP's second argument. If all of the FBI summaries that Kennedy reviewed and discussed with Foster were the files only of then-current Clinton Administration employees, then plaintiffs' inquiry seeks irrelevant matter because this information does not pertain to plaintiffs in this lawsuit. Plaintiffs' claims are based on the misuse of the FBI files of former government employees. Complaint ¶ 21; *see also Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 10 (D.D.C. Apr. 16, 1999) (re: Mari Anderson). But the court's agreement with defendant EOP's reasoning ends at this point.

The court cannot accept defendant EOP's argument that Kennedy could not have discussed any of plaintiffs' FBI information with Foster, and it cannot fully accept defendant EOP's relevance objection as to the FBI summaries. First, defendant EOP asks the court to assume that there is no reasonable basis for the idea that Kennedy could have reviewed any of plaintiffs' FBI summary information and discussed it with his colleague Foster, based upon the date of Foster's death and the date plaintiffs' files were transmitted to the White House. The court cannot make this finding at this juncture of the discovery process. The only "conclusive" evidence that defendant EOP points to as to

---

2. Defendant EOP bases much of their argument, especially in terms of privilege, on the *substance* of these conversations. Although plaintiffs do ask in their proposed order to be able to ask questions "reasonably related" to the information they seek to compel, the question actually asked at the deposition only pertains to *identities*. Therefore, because the court will only rule on objections to questions asked at the deposition, the court will analyze defendant EOP's objections only as they pertain to revealing identities.

when plaintiffs' files were obtained is a declaration of one of defendants' employees. Although this may very well be the correct date of the acquisition of the files at issue, plaintiffs are not limited in discovery by this "fact" simply because it is one that defendant EOP will seek to establish at trial. It is likely the very type of fact that plaintiffs will seek to contest at trial and, therefore, the kind of information on which plaintiffs should seek discovery. Second, the court cannot accept defendant EOP's argument that the identities of people whose FBI summaries were discussed, other than then-current Clinton Administration employees, are irrelevant, even if these people were "properly within the appointment process," to borrow Kennedy's phrase. Tripp's testimony as to files that she saw in the White House Counsel's Office and, more specifically, Kennedy's office, conflicts with Kennedy's testimony that the only such files he had were for those people within the appointment process. Moreover, plaintiffs should not be forced to blindly accept that the names of people Kennedy discussed—possibly plaintiffs' names— were properly within the appointment process. Plaintiffs are entitled to this information, to the extent they were not names of then-current Clinton Administration employees, to make their own determination of propriety. For these reasons, the court finds that plaintiffs' questions to Kennedy, to the extent they do not reveal identities of then-current Clinton Administration employees, are relevant.[3]

The testimony of Tripp, whose deposition was taken after Kennedy's, provides a suitable basis to allow further, limited testimony on this topic. Although Tripp admitted that she was not absolutely sure of whose or exactly what type of files she saw, Tripp clearly testified that she saw "stacks and stacks" of what she believed were FBI files in Kennedy's office. In fact, Tripp specifically recalls having a conversation with Kennedy about a number of FBI files that were in his office. According to Tripp, Kennedy indicated to her that a certain stack of these files, which were sitting on his desk, were not "vetting" files—*i.e.*, they were *not* files used for the appointment or clearance process. Given this testimony and the relevance of this line of inquiry, the court believes that, in the absence of an applicable privilege, plaintiffs should be allowed to continue Kennedy's deposition and receive clear testimony on this point. This testimony will not be unreasonably cumulative, plaintiffs should be given an opportunity to obtain this information in light of Tripp's testimony subsequently given under oath, and the burden of this inquiry is outweighed by the potential importance to the case. *See* FED.R.CIV.P. 26(b)(2) & 30(a)(2)(B).[4]

To summarize thus far, plaintiff originally sought only the identities of the subjects of the FBI summaries that Kennedy discussed with Foster. The court has effectively narrowed this inquiry to exclude then-current Clinton Administration employees. Thus, defendant EOP's privilege claims are only applicable to the extent that they go to individuals falling within this relevant category. All of defendant EOP's applicable objections are focused on one group of individuals— those prospective employees within the suitability review process. This would include people recommended for appointments or otherwise within the appointment process. As to these individuals, defendant EOP claims that plaintiffs should be denied the identities because of privacy concerns, the attorney-client privilege, and the deliberative process privilege. The court rejects all of these claims.

■ First, the privacy implications cited by defendant EOP should not preclude plaintiffs from learning these identities. All of the privacy concerns cited would be implicated only if the substance of what was dis-

---

3. Post-deposition declarations have been submitted by defendant EOP to the effect that all of the FBI summaries Kennedy remembers discussing were those of persons who were then-current employees or appointees. Consistent with numerous similar instances in this case, the court will not accept these statements without allowing plaintiffs to have the opportunity to contest them by deposition.

4. Because this court does not have the power to issue an order for the continuance of Kennedy's deposition, however, plaintiffs would need to obtain this from the Western District of Arkansas.

cussed was disclosed.[5] In light of their importance, any privacy interest in withholding these identities would be outweighed by plaintiffs' need for these names in this case. Moreover, the court rejects the proposition that being discussed in a suitability review automatically leads to a negative inference about that person's background. Disclosing these names, without disclosing the substance of any underlying allegations of unsuitability, would not unreasonably impinge upon these persons' privacy interests.

■ Second, the court rejects defendant EOP's attorney-client privilege claim over the identities of the people discussed. The court is simply not convinced that the communication at issue—the names given by the President or his staff to his attorneys in the White House Counsel's Office—was made for the purpose of securing legal advice. *See Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C.Cir.1997) (requiring that the information be given in furtherance of seeking legal advice).[6] The essence of defendant EOP's argument on this point is that Kennedy was providing legal services because his job entailed "an evaluation of any allegations or evidence of unlawful or potentially unlawful activity (such as discriminatory conduct, or non-payment of taxes) and the severity of the offenses alleged." Ruff Decl. ¶ 10. In the court's view, however, there is nothing peculiarly lawyerly about the gathering of this information. Instead, Kennedy's function appears to be more akin to the role of an investigator, whose activities are generally not privileged. *See* 24 CHARLES ALAN WRIGHT AND KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5478, at 233 (1986). The evaluation of the investigative records gathered might be a legal function, but the court fails to see how attorney-client privilege can protect the identities themselves of those whose suitability is being ascertained. Therefore, the court rejects defendant EOP's claim of attorney-client privilege over these identities.

■ Third, the court rejects defendant EOP's deliberative process privilege claim. Plaintiffs' cause of action turns on the intent of defendant EOP. *See* 5 U.S.C. § 552a(g)(4). The Court of Appeals for the District of Columbia Circuit has recently held that the deliberative process privilege is inapplicable when the cause of action turns on the government's intent. *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency ("OCC I")*, 145 F.3d 1422, 1424 (D.C.Cir.1998), *on reh'g in part*, 156 F.3d 1279 (D.C.Cir.1998). The information at issue—whether Kennedy discussed plaintiffs' FBI file information—is certainly not collateral to plaintiffs' claims. *OCC I*, 145 F.3d at 1424. Therefore, defendant EOP's deliberative process privilege claim will be rejected. Moreover, defendant EOP has not met its burden of proving the necessary result in a deliberative process privilege balancing analysis. The need for these identities far outweighs the government's interests in keeping them withheld. Therefore, defendant EOP's privilege claims fail. Accordingly, plaintiffs may seek an order from the Western District of Arkansas for a continued deposition on this topic.

### 3. *Question 3*

Defendant EOP's objection to this line of questioning will be sustained. Plaintiffs' questions posed at the deposition were originally objected to by defendant EOP, but later mooted when Kennedy was allowed to fully answer these questions in relevant part.

Plaintiff originally asked two questions on this topic: (1) Did Kennedy ever express any concerns to anybody about the fact that Livingstone had no formal training in handling FBI documents before being hired as the head of the White House Office of Personnel Security?; and (2) Did Kennedy ever discuss

---

5. For example, defendant EOP heavily relies on the argument that revealing the identities of people within the appointment process could "raise questions" about their character given the nature of allegations that suitability reviews are based upon.

6. To the extent these identities were discussed between Kennedy and Foster, their privileged (or unprivileged) nature would not be affected because the discussions would reveal client-supplied information. *See, e.g., Hunt v. U.S. Marine Corps*, 935 F.Supp. 46, 53 (D.D.C.1996); Supreme Court Standard 503.

Livingstone's qualifications with Special Agent Gary Aldrich? Plaintiff does nothing more than conclusorily allege the relevance of this line of inquiry. *See* Plaintiffs' Motion to Compel at 20–21 (stating that "Livingstone is at the heart of the Plaintiffs' complaints about violations of their privacy"; that "[q]uestions concerning Livingstone's performance, experience and qualifications are extremely relevant"; and that these were "relevant foundational questions"). Although the court does not wish to invent theories of relevancy for plaintiffs, it appears that their best argument would be that Kennedy's comments regarding Livingstone's inadequate qualifications would somehow support the inference that Livingstone was placed in his job for some ulterior motive relevant to this case. Even assuming this would be a relevant inquiry, Kennedy has answered these questions in relevant part.

Q: Did Hillary Clinton strongly recommend Craig Livingstone?

A: I don't know.

Q: Does Hillary Clinton know Craig Livingstone's mother?

A: I don't know, Mr. Klayman.

Q: Did you ever tell Special Agent Sculinbrene that you did not hire Craig Livingstone?

A: I don't recall discussing Craig Livingstone with Agent Sculinbrene.

Q: Did you ever tell Special Agent Sculinbrene that you didn't want Mr. Livingstone in the job?

A: I do not recall doing so; no, sir.

Q: Did you ever tell anybody that?

A: We might be drifting into a privileged area.

[Discussion with counsel.]

A: I can't remember precisely how the question was phrased. I'm going to state my understanding of [the pending question] with you, is that *it had to do if I ever discussed Craig Livingstone's hiring with anyone with the White House. And the answer is, yes, I discussed it with Mr. Foster and then with Christine Varney.*

Kennedy Depo. at 259–60 (emphasis added). Kennedy then went on to testify in detail as to his conversations with each of these persons. *See* Kennedy Depo. at 260 (stating that he expressed his concerns in his conversations with Foster and Varney); 273–74 (explaining that he expressed his concerns, which were already described, in his conversation with Foster; Foster said that they were valid concerns; and Foster directed Kennedy to speak with Varney); 280 (recounting the substance of his conversation with Varney); 274 (explaining that, after his conversation with Varney, he reported back to Foster; Livingstone was then hired); *see also* Kennedy Depo. at 201–02 (specifying, independent of any conversations that he may have had, Kennedy's own concerns regarding Livingstone's hiring); 273–74 (stating that he never discussed Livingstone with Hillary Clinton or Bernard Nussbaum). Kennedy also stated that he could not recall having any conversation on this topic with Special Agent Aldrich. *See* Kennedy Depo. at 270–71.

■ In short, Kennedy testified that he had conversations with only *three* White House employees regarding his concerns about Livingstone's job qualifications. Kennedy named these people and testified fully as to the substance of each of these conversations. Kennedy also stated, independently of any conversations that he may have had, what his concerns as to Livingstone were. Moreover, he testified that he had no conversation regarding any such concerns with Special Agent Gary Aldrich. In light of this testimony, defendant EOP's objection is moot. Further testimony on this point would be cumulative.

### 4. *Sanctions*

■ Plaintiffs' motion to compel will be granted in part and denied in part. Therefore, the court must apportion attorneys' fees and expenses concerning this motion unless the parties' positions were substantially justified. FED.R.CIV.P. 37(a)(4)(c). Under this standard, the court finds that sanctions are not warranted. The parties have reasonably disagreed as to these discovery issues and these disagreements were justifiable. Therefore, no sanctions will be imposed.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that Plaintiffs' Motion [553] to Compel Further Deposition Testimony from William H. Kennedy, III and for Sanctions is GRANTED IN PART and DENIED IN PART. In this regard, it is FURTHER ORDERED that:

1. Plaintiffs' request for the court to rule upon objections made at Kennedy's deposition by attendees other than defendant EOP is DENIED.

2. Defendant EOP's attorney-client privilege objection to Question 1 is SUSTAINED.

3. Defendant EOP's relevance objection to Question 2, as to the identities of the subjects of the FBI summaries discussed between Kennedy and Foster, to the extent these persons were then-current Clinton Administration employees, is SUSTAINED.

4. Defendant EOP's relevance objection to Question 2, as to the identities of the subjects of the FBI summaries discussed between Kennedy and Foster, to the extent these persons were not then-current Clinton Administration employees, is OVERRULED.

5. Defendant EOP's privilege objections to Question 2, to the extent applicable after the court's ruling in paragraph 3 of this order, are OVERRULED.

6. Further testimony by oral deposition on the subject matter of Question 2, as limited by paragraph 3 of this order, would be appropriate.

7. Defendant EOP's objection to Question 3 is SUSTAINED.

8. Sanctions are not warranted by the positions taken by either side in this matter because these positions were substantially justified and turned on reasonable discovery disagreements under the applicable law.

SO ORDERED.